IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| WILSON P. RICHARD | : | |
| | : | No. 3:18-CV-00559-UN2 |
| Plaintiff | : | (JUDGE MARIANI) |
| v. | : | |
| | : | |
| FINANCE OF AMERICA | : | |
| MORTGAGE, LLC formerly known as | : | |
| GATEWAY FUNDING DIVERSIFIED | : | |
| MORTGAGE SERVICES, LP; | : | |
| QBE INSURANCE CORPORATION | : | |
| OCWEN LOAN SERVICING, LLC and | : | |
| GREAT AMERICAN ASSURANCE | : | |
| COMPANY | : | |
| | : | |
| Defendants | : | Electronically Filed |

**SECOND
AMENDED COMPLAINT**

**AND NOW,** comes the Plaintiff, WILSON P. RICHARD, individually and

on behalf of FINANCE OF AMERICA MORTGAGE, LLC formerly known as

GATEWAY FUNDING DIVERSIFIED MORTGAGE SERVICES L.P., by and

through his counsel, John P. Rodgers, Esquire, and files this, his Second Amended

Complaint, against Defendants, FINANCE OF AMERICA MORTGAGE, LLC

formerly known as GATEWAY FUNDING DIVERSIFIED MORTGAGE

SERVICES L.P., QBE INSURANCE CORPORATION, GREAT AMERICAN

ASSURANCE COMPANY and OCWEN LOAN SERVICING, LLC, and in

support thereof, avers as follows:

## PARTIES

1.    Plaintiff, Wilson P. Richard (hereinafter referred to as "Richard"), is an adult and competent individual, residing at 12 Poplar Drive, Jim Thorpe, PA 18229.

2.    Defendant, FINANCE OF AMERICA MORTGAGE, LLC (hereinafter "FINANCE OF AMERICA") formally known as GATEWAY FUNDING DIVERSIFIED MORTGAGE SERVICES L.P (hereinafter "GATEWAY FUNDING"), is a limited liability company with a principle place of business situate at 15325 Fairfield Ranch Road, Suite 200, Chino Hills, CA 91709.

3.    FINANCE OF AMERICA, at all times relevant hereto, has been regularly engaged in the business of providing financing for the purchase of the real property.

4.    Defendant, OCWEN LOAN SERVICING, LLC (hereinafter "OCWEN"), is a limited liability company with a mailing address of PO Box 24738, West Palm Beach, FL 33416-4738.

5.    OCWEN, at all times relevant hereto, has been regularly engaged in the business of servicing mortgage in Carbon County, Pennsylvania.

6.    Defendant, QBE INSURNACE CORPORATION (hereinafter "QBE INSURANCE"), is a corporation with its principle place of business situate at One General Drive, Sun Prairie, WI 53596.

7.     QBE INSURNACE at all times relevant hereto, has been regularly engaged in the business of providing property and casualty insurance in Carbon County, Pennsylvania, and has been licensed to engage in such business.

8.     Defendant, GREAT AMERICAN ASSURANCE COMPANY (hereinafter "GREAT AMERICAN"), is a company with its principle place of business situate at 301 East 4th Street, Cincinnati, OH 45202.

9.     GREAT AMERICAN at all times relevant hereto, has been regularly engaged in the business of providing mortgage protection insurance coverage for FINANCE OF AMERICA in Carbon County, Pennsylvania, and has been licensed to engage in such business.

## JURISDICTION

10.     This case is a civil action arising under the Real Estate Settlement Procedures Act, 12 U.S.C. §2601 et.seq ("RESPA") over which this Court has original jurisdiction under 28 U.S.C. §1331.  Jurisdiction of this Court arises under 28 U.S.C. §1331 because the Complaint alleges a federal claim and requires the resolution of substantial questions of federal law.

11.     Venue in this District is proper because Jim Thorpe, Carbon County, Commonwealth of Pennsylvania is where the property that is the subject of the action is situated.  28 U.S.C. §1391(b)(2).  Under 28 U.S.C. §1367(a), this Court has supplemental jurisdiction over Plaintiff's state law claims in that it is so related

to Richard's federal claims that they form part of the same case or controversy under Article III of the United States Constitution.

12.    Jurisdiction is also predicated under 28 U.S.C. §1332 due to the fact that the amount in controversy of the action exceeds exclusive interests and costs the sum of $75,000.00.

## BACKGROUND
## AND
## GENERAL ALLEGATIONS

13.    Plaintiff incorporates herein by reference Paragraphs 1-12 of his Amended Complaint as if the same were set forth fully at length herein.

14.    On or about December 12, 2014, Richard obtained a loan from GATEWAY FUNDING which is now known as FINANCE OF AMERICA in the amount of $186,559.00 for the purchase of his residence located at 12 Poplar Drive, Jim Thorpe, Carbon County, PA 18229 (hereinafter "the premises") which was secured by a mortgage on the premises. A copy of the Mortgage is attached hereto, made a part hereof and labeled Exhibit "A."

15.    As a condition for providing financing, Finance of America required Richard to pay a monthly escrow for the payment of real estate taxes and property insurance.

16. Prior to the purchasing the premises, Richard requested that Progressive Insurance obtain proper and adequate fire and hazard insurance to insure the premises.

17. Progressive Insurance obtained a policy of insurance from QBE INSURANCE, pursuant to Police Number QHP3209975 which commenced on December 12, 2014.  A copy of the Policy of Insurance is attached hereto, made a part hereof and labeled Exhibit "B".

18. Due to the fact that Richard was required by GATEWAY FUNDING as a condition to providing financing to pay insurance payments into escrow, FINANCE OF AMERICA was responsible for paying premiums to QBE INSURANCE.

19. Immediately after closing on the Richard's loan, GATEWAY FUNDING transferred servicing of his loan to Ocwen Loan Servicing, LLC.

20. On December 2, 2015, upon transferring servicing of Richard's Mortgage back to FINANCE OF AMERICA, OCWEN erroneously represented that it had paid Richard's insurance premiums prior to the expiration of his policy from monies being held in escrow.

21. It is averred and believed that, prior to the expiration of the Richard's policy of insurance, PROGRESSIVE INSURANCE and/or QBE INSURANCE sent a notice of cancellation or non-renewal to OCWEN and/or FINANCE OF

AMERICA and to Richard at his previous address which was 3425 Linden Place, Apartment 1J, Flushing, New York, 14354 despite the fact that they were aware that Richard had moved to the premises.

22.    Due to the fact that the Notices were sent to his previous address, Richard did not receive a notice of cancellation or notice of non-renewal.

23.    Upon being notified of cancellation or nonrenewal of the QBE Insurance Policy, rather than paying the renewal premium as required by Richard's financing documents, OCWEN and/or FINANCE OF AMERICA obtained forced placed insurance coverage with GREAT AMERICAN pursuant to Policy Number 1135405 which commenced on February 1, 2016.  A copy of said Policy of Insurance is attached hereto, made a part hereof and labeled Exhibit "C".

24.    Despite the fact that the forced placed insurance purchased by FINANCE OF AMERICA was effective February 1, 2016, FINANCE OF AMERICA did not notify Richard of its intent to obtain forced placed insurance until March 1, 2016.

25.    On or about March 15, 2016, a water pipe ruptured, which caused water damage to the premises (hereinafter "THE 1ST LOSS") in the amount of $51,792.58, which is broken down as follows:

> a) Damage to the Plaintiff's contents was in the amount of $26,384.16.

b) Damage to the Plaintiff's structure and dwelling was in the amount of $16,983.06.

c) Damages for mold remediation due to Defendants failure to pay for Demolition and clean up in the amount of $8,425.36.

26.     The damage to Richard's structure and dwelling were covered pursuant to provisions of the forced placed insurance that was obtained by FINANCE OF AMERICA from GREAT AMERICAN on behalf of Richard.

27.     After being notified of Richard's loss, FINANCE OF AMERICA authorized Richard to submit a claim on its behalf under Section VIII, Paragraph D. (8) which provides as follows:

D.      Your Duties After Loss – When a loss occurs, you shall:

…The mortgagor, at your direction and as your representative, may submit claims on your behalf and perform any of your duties. However, we reserve the right to require your assumption of any and all your duties, for any reason.

28.     On June 29, 2016, by virtue of written correspondence dated June 29, 2016 from John P. Rodger, Esquire, Richard submitted a claim for mold remediation in the amount of $6,240.16.

29.     After Richard submitted a claim on behalf of FINANCE OF AMERICA, GREAT AMERICAN made payment to Richard in the amount of $2,773.30.

30.    On July 13, 2016, by virtue of written correspondence from its Claims Specialist, Seattle Specialty Insurance Services, GREAT AMERICAN acknowledged that Richard was permitted to submit a claim on behalf of FINANCE OF AMERICA for his loss.  A copy of said correspondence is attached hereto, made a part hereof and labeled Exhibit "D".

31.    On or about June 1, 2016, after receiving payment from GREAT AMERICAN, FINANCE OF AMERICA sent a check to Richard in the amount of $2,773.30 for reimbursement of the claim submitted by Richard that he never cashed. A copy of said check is attached hereto as Exhibit "E".

32.    On or about February 7, 2017, after receiving payment from GREAT AMERICAN for the mold remediation claim submitted by Richard on its behalf, FINANCE OF AMERICA sent a second check in the amount of $6,240.16 to the Mr. Richard's and Clean Forced #1, LLC. A copy of said check is attached hereto as Exhibit "F".

33.    On or about February 24, 2017, Richard sustained a second loss when the faucet in the kitchenette on the second floor of the premises ruptured, causing additional damage to the premises (hereinafter "THE 2ND LOSS") in the amount of $24,957.03 (without an air quality test conducted), which is broken down as follows:

a) Damages to the Plaintiff's structure and dwelling was in the amount of $18,021.49.

b) Damages for the Demolition and Clean out of the premises that was paid of pocket by Richard in the amount of $6,005.37.

c) Damages for mold remediation due to Defendants failure to pay for Demolition and clean up in the total amount of $930.17, which continue to accrue until remediated to this day.

34. After sustaining the 2nd Loss, on September 28, 2017, Richard once again made a claim on behalf of FINANCE OF AMERICA with GREAT AMERICAN by virtue of written correspondence from his attorney, John P. Rodgers, Esquire. A copy of said correspondence is attached hereto, made a part hereof and labeled Exhibit "G".

COUNT I

WILSON P. RICHARD
V.
FINANCE OF AMERICA MORTGAGE, LLC
formally GATEWAY FUNDING DIVERSIFIED MORTGAGE SERVICES, LP
and OCWEN LOAN SERVICING, LLC

VIOLATION REAL ESTATE SETTLEMENT
PROCEDURES ACT, 12 U.S.C. §2601 ET.SEQ ("RESPA")

35. Plaintiff incorporates herein by reference Paragraphs 1-34 of his Complaint as if the same were set forth fully at length herein.

36.    Pursuant to Richard's Loan Agreement and Paragraph 2 of the Mortgage which provides as follows, Richard was required to escrow his premiums for his homeowner's insurance:

> (2) Borrower shall include in each monthly payment, together with the principal and interest as set forth in the Note and any late charges, a sum for …
> (c) premiums for insurance required in Paragraph 4. …

37.    Pursuant to Richard's escrow agreement, his monthly payment included principal, interest, real estate taxes and insurance.

38.    Despite the fact that OCWEN and/or FINANCE OF AMERICA had monies in escrow for the payment of Richard's insurance, it failed to pay the premium to renew his insurance which caused his insurance to be cancelled.

39.    Upon cancellation and/or non-renewal of Richard's QBE Insurance Policy, FINANCE OF AMERICA obtained forced placed insurance from GREAT AMERICAN despite the fact that it was holding monies to pay the insurance premium in escrow.

40.    Except as provided in paragraph (k)(5)(III) of the Regulation issued by the Bureau of Consumer Finance Protection to implement the Real Estate Settlement Procedures Act of 1974, with respect to a borrower whose mortgage payment is more than 30 days overdue, but who has established an escrow account for the payment for hazard insurance, as defined in §1024.31, a servicer is not permitted to purchase forced placed insurance, as that term is defined in

§1024.37(a), unless a servicer is unable to disburse funds from the borrower's escrow account to ensure that the borrower's hazard insurance premium charges are paid in a timely manner. 12 CRR §1024.17(K)(5)(i).

41.    A servicer is considered unable to disburse funds from a borrower's escrow account to ensure that the borrower's hazard insurance premiums are paid in a timely manner only if the servicer has a reasonable basis to believe either that the borrower's hazard insurance has been canceled (or was not renewed) for reasons other than nonpayment of premium charges or that the borrower's property is vacant.  12 CRR §1024.17(K)(5)(ii)(A).

42.    A servicer shall not be considered unable to disburse funds from the borrower's escrow account because the escrow account contains insufficient funds for paying hazard insurance premium charges. 12 CRR §1024.17(K)(5)(ii)(B).

43.    Despite the fact that, FINANCE OF AMERICA was able to disburse funds from Richard's escrow account to renew his insurance, it chose to obtain forced placed insurance from GREAT AMERICAN on behalf of Richard.

44.    Prior to purchasing forced placed insurance, a servicer must comply with the following requirements: first, servicer must provide forty-five (45) days advance written notice; second, by the end of the forty-five (45) day notice period, a servicer must not have received evidence demonstrating that borrower has purchased hazard insurance. 12 C.F.R. 1024.37(e).

45.     FINANCE OF AMERICA did not provide Richard notice of its intent to purchase forced placed insurance with GREAT AMERICAN until March 18, 2016 despite the fact that it obtained forced placed insurance on February 1, 2016.

46.     As a result of the failure by FINANCE OF AMERICA to make payments for the QBE Insurance Policy from escrow and providing Richard with notice of its intent to purchase forced placed insurance forty-five (45) days prior to obtaining insurance from GREAT AMERICAN, Richard was unable to be fully compensated for the damages to his structure and to make a claim for damages to his contents.

WHEREFORE, as a result of Defendants, Finance of America Mortgage, LLC formally Gateway Funding Diversified Mortgage Services, LP and/or Ocwen Loan Servicing, LLC's violation of the Real Estate Settlement Procedures Act, Richard requests this Court grant the following relief as against Defendant, Finance of America Mortgage, LLC formally Gateway Funding Diversified Mortgage Services, LP:

A.     Actual damages as prayed for herein in an amount to be determined at trial, 12 U.S.C. §2605(f)(1)(A);

B.     Statutory damages as prayed for herein in the amount of $2,000.00 per violation, because such conduct was part of a pattern and practice of noncompliance, 12 U.S.C. §2605(1)(1)(B);

C.    Costs of this action, including reasonable attorney fees as provided under 12 U.S.C. §2605(1)(3); and

D.    Such other and further relief as this Court deems appropriate.

COUNT II

WILSON P. RICHARD
V.
FINANCE OF AMERICA MORTGAGE, LLC
formally GATEWAY FUNDING DIVERSIFIED MORTGAGE SERVICES, LP
and OCWEN LOAN SERVICING, LLC

BREACH OF CONTRACT

47.    Plaintiff incorporates herein by reference Paragraphs 1-46 of his Complaint as if the same were set forth fully at length herein.

48.    Pursuant to Richard's Loan Documents for the property located at 12 Poplar Drive, Jim Thorpe, Carbon County, Pennsylvania and escrow agreement which was entered into by Richard on February 14, 2014. FINANCE OF AMERICA agreed to collect and hold monies for property insurance in escrow.

49.    Despite having monies in escrow, OCWEN and/or FINANCE OF AMERICA did not make payment to renew Richard's insurance.

50.    It is averred and believed that OCWEN and/or FINANCE OF AMERICA received notice of cancellation or non-renewal of Richard's insurance prior to its expiration on December 12, 2015.

51.     As escrow agent, FINANCE OF AMERICA did not provide notice to Richard that his insurance had been cancelled or not renewed until March 12, 2016 which was after the commencement of the forced placed insurance policy.

52.     Rather than providing Richard with notice that his insurance had been cancelled or not renewed, FINANCE OF AMERICA obtained forced placed insurance from GREAT AMERICAN which did not provide coverage for Richard's personal property which commenced prior to providing Richard notice of the expiration of his insurance policy.

53.     At all times relevant hereto, OCWEN and/or FINANCE OF AMERICA had a statutory, contractual and fiduciary duty to notify Richard that his insurance had been cancelled or not renewed prior to obtaining forced placed insurance.

54.     As a result of the foregoing breach of contract by FINANCE OF AMERICA, Richard has suffered damages as more fully set forth herein for which a claim is herein made.

WHEREFORE, Plaintiff, Wilson P. Richard, respectfully requests this Honorable Court to enter judgment in his favor and against the Defendants, Finance of America Mortgage, LLC, formally Gateway Funding Diversified Mortgage Services, LP and Ocwen Loan Servicing, LLC, in an amount in excess of $75,000.00 and award all such other legal and equitable relief, including

attorney's fees, interest and punitive damages that the Court deems proper and just, actual and consequential damages sustained by Richard as prayed for herein, damages, foreseeable or not, that are a direct consequence of Finance of America's bad faith failure to perform as prayed herein and such other and further relief as this Court deems appropriate.

## COUNT III

## WILSON P. RICHARD
## V.
## QBE INSURANCE CORPORATION

## BREACH OF CONTRACT

55.     Plaintiff incorporates herein by reference Paragraphs 1-54 of his Complaint as if the same were set forth fully at length herein.

56.     The water loss which occurred on March 15, 2016, caused damages to Richard's property, which property is the subject of the policy at issue herein.

57.     The failure of QBE INSURANCE to provide Richard with notice that his policy had been cancelled and/or not renewed was a violation of its statutory, contractual and fiduciary duty to Richard and constituted breach of the agreement to provide insurance by QBE INSURANCE to Richard.

58.     The failure of QBE INSURANCE to reimburse Richard for his loss is a breach of the insurance policy agreement referenced herein.

59. Despite repeated demands, QBE INSURANCE has failed and continues to refuse to make payment to Richard as more fully set forth herein which is due and owing pursuant to the above referenced policy of insurance.

WHEREFORE, Plaintiff, Wilson P. Richard, individually and/or on behalf of FINANCE OF AMERICA respectfully requests this Honorable Court to enter judgment in his favor and against the Defendant, QBE Insurance Corporation, in an amount in excess of $75,000.00 and award all such other legal and equitable relief, including attorney's fees, interest and punitive damages that the Court deems proper and just, actual and consequential damages sustained by Richard and/or FINANCE OF AMERICA as prayed for herein, damages, foreseeable or not, that are a direct consequence of QBE Insurance Corporation's bad faith failure to perform as prayed herein and such other and further relief as this Court deems appropriate.

## COUNT IV

WILSON P. RICHARD, INDIVIDUALLY
AND ON BEHALF OF FINANCE OF AMERICA
V.
GREAT AMERICAN ASSURANCE COMPANY

### BREACH OF CONTRACT

60. Plaintiff incorporates herein by reference Paragraphs 1-59 of his Complaint as if the same were set forth fully at length herein.

61.    As a result of THE 1ST LOSS, FINANCE OF AMERICA and Richard incurred damages in the amount of $51,792.58 which is broken down as follows:

a.    Damage to the Plaintiff's contents was in the amount of $26,384.16.

b.    Damage to the Plaintiff's structure and dwelling was in the amount of $16,983.06.

c.    Damages for mold remediation due to Defendants failure to pay for Demolition and clean up in the amount of $8,425.36

62.    As a result of THE 2ND LOSS, FINANCE OF AMERICA and Richard incurred damages in the amount of $24,957.03 which is broken down as follows:

a)    Damages to the Plaintiff's structure and dwelling was in the amount of $18,021.49.

b)    Damages for the Demolition and Clean out of the premises that was paid of pocket by Richard in the amount of $6,005.37.

c)    Damages for mold remediation due to Defendants failure to pay for Demolition and clean up in the total amount of $930.17 which continue to accrue until remediated.

63.    After Richard was permitted by FINANCE OF AMERICA to submit a claim on its behalf, on or about November 2, 2017, by virtue of email to Richard's counsel Attorney Patrick J. Hughes from Nicole Porter, Senior Clams

representative for National General Lender Services, Adjusting, LLC confirmed that additional damages were owed for THE 1ST LOSS and that THE 2ND LOSS was a covered loss. A copy of said email is attached hereto as Exhibit "H".

64.    After being informed that additional coverage was being provided for the first loss, by virtue of written correspondence from John St. Onge, Senior Claims Representative for National General Lender Services, Adjusting, LLC dated January 4, 2018, Richard was informed that there was no additional coverage for THE 1ST LOSS and that THE 2ND LOSS would not be covered. A copy of said email is attached hereto as Exhibit "I".

65.    Despite tendering payments on THE 1ST LOSS in the amount of $2,773.30 and $6,240.16 to FINANCE OF AMERICA as payment for the claim submitted by Richard and admitting that additional monies were due and owing on THE 1ST LOSS, by virtue of written email dated November 22, 2017 from Nicole Porter, Senior Claims representative for National General Lender Services Adjusting, LLC, GREAT AMERICAN refused to pay all monies due on THE 1ST Loss.

66.    Despite the fact that, after submitting a claim on behalf of FINANCE OF AMERICA, Richard was notified by Nicole Porter, Senior Claims representative for National General Lender Services Adjusting, LLC that THE 2ND LOSS was a covered loss, GREAT AMERICAN refused to make payment for

THE 2ND LOSS, which is covered pursuant to the provisions of the policy of insurance.

WHEREFORE, Plaintiff, Wilson P. Richard, individually and on behalf of FINANCE OF AMERICA, respectfully requests this Honorable Court to enter judgment in his favor and against the Defendant, Great American Assurance Company, in an amount in excess of $75,000.00 and award all such other legal and equitable relief, including attorney's fees, interest and punitive damages that the Court deems proper and just, actual and consequential damages sustained by Richard and/or FINANCE OF AMERICA as prayed for herein, damages, foreseeable or not, that are a direct consequence of Great American Assurance Company's bad faith failure to perform as prayed herein and such other and further relief as this Court deems appropriate.

## COUNT V

WILSON P. RICHARD, INDIVIDUALLY
AND ON BEHALF OF FINANCE OF AMERICA
V.
GREAT AMERICAN ASSURANCE COMPANY

## BAD FAITH

67.    Plaintiff incorporates herein by reference Paragraphs 1-66 of his Complaint as if the same were set forth fully at length herein.

68.     GREAT AMERICAN's failure to make payment for the loss occurring upon the said premises does constitute an unreasonable delay and does, additionally, constitute bad faith on the part of the Defendants, GREAT AMERICAN, in violation of 40 P.S. §1171.51(a)(10)(i) for misrepresenting pertinent facts of policy or contract provisions relating to coverage at issue, thereby entitling the Richard to an award of interest on the amount of the claim from the date the claim was made at a rate of the Prime Rate of interest plus three percent (3%), punitive damages, court costs, and attorneys fees pursuant to 42 P.S. §8371.

69.     The failure of GREAT AMERICAN to make payment for the loss occurring upon the said premises does constitute an unreasonable delay and does, additionally, constitute bad faith on the part of GREAT AMERICAN in violation of 40 P.S. §1171.51(a)(10)(vii) for compelling persons to institute litigation to recover amounts due under an insurance policy by offering substantially less than the amounts due and ultimately recovered in action brought by such persons, thereby entitling Richard to an award of interest on the amount of the claim from the date the claim was made at the rate of the Prime Rate of interest plus three (3%) percent, punitive damages, court costs and attorneys fees pursuant to 42 P.S. §8371.

70.    Insurance proceeds remain due and owing by GREAT AMERICAN to FINANCE OF AMERICA and/or Richard pursuant to the claim filed by Richard for the loss and damage sustained him at his premises located at 12 Poplar Drive, Jim Thorpe, Carbon County, Pennsylvania by reason of water damaging Richard's premises, together with damages for bad faith pursuant to 42 P.S. §8371, additionally, entitling Richard to an award of interest on the amount of the claim from the date the claim was made at a rate of the Prime Rate of interest plus three (3%) percent, punitive damages, court costs and attorneys fees.

WHEREFORE, Plaintiff, Wilson P. Richard, individually, and on behalf of FINANCE OF AMERCIA respectfully requests this Honorable Court to enter judgment in his favor and against the Defendant, Great American Assurance Company, in an amount in excess of $75,000.00 together with interest at the Prime Rate of interest plus three (3%) punitive damages, court costs and attorney's fees.

Respectfully submitted,

/s/ John P. Rodgers, Esquire
Attorney for Plaintiff
ECF USER
Supreme Court ID #79998
Wetzel, Phillips, Rodgers & Falcone
1170 Highway 315, Suite 1, Plains, PA 18702
570-823-0101(PHONE) / 570-825-7799 (FAX)
jrodgers@wcprlaw.com