# THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| WILSON P. RICHARD, | : |
| | : |
| Plaintiff, | : |
| v. | :    3:18-CV-559 |
| | :    (JUDGE MARIANI) |
| FINANCE OF AMERICA | : |
| MORTGAGES, LLC, et al., | : |
| | : |
| Defendants. | : |

## MEMORANDUM OPINION

### I. INTRODUCTION

Presently before the Court is Magistrate Judge Carlson's Report and Recommendation ("R&R") (Doc. 78) regarding Defendant Great American Assurance Company's ("Great American's") and Defendant QBE Insurance Corporation's ("QBE's") respective motions to dismiss Plaintiff Wilson P. Richard's ("Richard's") complaint for failure to state a claim upon which relief can be granted under Fed. R. Civ. P. 12(b)(6) (Doc. 44, Doc. 75).[1] For the reasons stated below, the Court will adopt the R&R, grant the motions to dismiss, and direct Richard to file an amended complaint within 28 days if he wishes to maintain this action against QBE.

---

[1] The R&R states that it addresses QBE's motion to dismiss Richard's First Amended Complaint (Doc. 47). Due to Richard's filing of his Second Amended Complaint (Doc. 69) prior to the issuance of the R&R, QBE's operative motion to dismiss is its motion to dismiss Richard's Second Amended Complaint (Doc. 75), which is substantively identical to its motion to dismiss the First Amended Complaint. As further explained below, the Court will evaluate the R&R's recommendations with respect to QBE's motion to dismiss Richard's Second Amended Complaint.

## II. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Richard's lawsuit alleges various claims under federal and state law against his mortgage lender/servicer, Defendants Finance of America Mortgage, LLC ("Finance of America") and Ocwen Loan Servicing, LLC ("Ocwen"), and two home insurance companies, Great American and QBE. (Doc. 69). The claims arise from damages caused by the failure of water pipes or fixtures that Richard alleges occurred at his home in Jim Thorpe, Pennsylvania. (*Id.* ¶¶ 25, 33). Richard asserts that the Defendants are liable for these damages, although his theory of liability for each Defendant differs. He contends that his problems began in or around December 2015 with the failure of Finance of America/Ocwen to pay his hazard insurance premiums to QBE, his home insurance company, from his mortgage escrow. (*Id.* ¶ 20). He then alleges that he believes that his insurance agent, Progressive Insurance,[2] and/or QBE "sent a notice of cancellation or non-renewal to OCWEN and/or FINANCE OF AMERICA and to Richard at his previous address which was 3425 Linden Place, Apartment 1J, Flushing, New York, 14354 despite the fact that they were aware Richard had moved to the [Jim Thorpe premises]." (Doc. 69 ¶ 21). As a result, Richard alleges he did not receive a notice of cancellation or non-renewal of his QBE insurance policy. (*Id.* ¶ 22). Finance of America/Ocwen never paid the renewal premium on the QBE insurance policy and instead obtained forced-placed insurance coverage with Great American (the "forced-placed insurance policy" or "Great American policy"), which commenced on February 1, 2016. (*Id.* ¶ 23). Richard alleges he was not informed of the

---

[2] Progressive Insurance was initially a defendant in this suit (*see* Doc. 1, Doc. 33), but Richard voluntarily dismissed Progressive Insurance with prejudice from this action in October 2018 (Doc. 64, Doc. 65).

intent of Finance of America to purchase the forced-placed insurance until March 1, 2016. (*Id.* ¶ 24). The forced-placed insurance policy, attached to the complaint, lists Finance of America as the insured party, not Richard, and states that the policy does not "**provide coverage for the interest or equity of the mortgagor. This is creditor placed insurance, protecting your** [Finance of America's] **mortgagee interest, subject to policy terms and conditions.**" (Doc. 67-4 at 1 (emphasis in original)).

On March 15, 2016, a water pipe ruptured in Richard's home, resulting in what Richard alleges was over $50,000 in damages. (*Id.* ¶ 25). Richard asserts that this damage was covered by the forced-placed insurance policy, that Finance of America "authorized Richard to submit a claim on its behalf" under the Great American policy, and that Richard's counsel submitted such a claim for $6,240.16 for mold remediation in June 2016. (*Id.* ¶¶ 26-28). Part of Richard's support for his allegation that he was permitted to submit claims on behalf of Finance to America is a July 13, 2016 letter attached to his complaint sent from Great American's claims administrator, Seattle Specialty Insurance Services, to Richard's counsel that states that "[u]nfortunately, we will be unable discuss [sic] the outcome of our investigation [of the claim] with you as Finance of America Mortgage LLC is the named insured on this policy." (Doc. 67-5 at 1).

Richard asserts that Great American made payment to Richard in the amount of $2,773.30 (Doc. 69 ¶ 29), but also admits that Great American paid Finance of America, and then Finance of America submitted a check for $2,773.30 to Richard (*id.* ¶ 31, Doc. 67-6 (copy of check from Finance of America to Richard)). In February 2017, Finance of

3

America submitted a second check to Richard for $6,240.16 from monies Great American submitted to Finance for America. (Doc. 69 ¶ 32, Doc. 67-7).

Also in February 2017, Richard alleges he "sustained a second loss when the faucet in the kitchenette on the second floor of the premises ruptured, causing additional damage to the premises" in the amount of nearly $25,000. (Doc. 69 ¶ 33). In September 2017, Richard asserts that he "again made a claim on behalf of FINANCE OF AMERICA with GREAT AMERICAN." (*Id.* ¶ 34). Richard complains that both the full amount of the March 2016 and February 2017 damages should have been covered by the Great American policy, but Great American refused to fully compensate him. (*Id.* ¶¶ 63-66).

Richard asserts a breach of contract claim against QBE (Count III), alleging that QBE failed to notify him that his original home insurance policy had been cancelled or not renewed. (*Id.* ¶¶ 55-59). He also asserts breach of contract (Count IV) and bad faith (Count V) claims against Great American, styled as claims being brought "individually and on behalf of Finance of America," for failure to cover in full his losses from the damages incurred in March 2016 and February 2017. (*Id.* ¶¶ 60-70).

Great American filed its motion to dismiss Richard's complaint on June 13, 2018. (Doc. 44). Great American argues that Richard does not have standing to bring claims against Great American because he is not a party to the forced-placed insurance policy, which only insures Finance of America's interest in the Jim Thorpe premises. (Doc. 45 at 5-11). Richard responds that he is a third-party beneficiary of the Great American insurance policy and that Great American should be equitably estopped from arguing that he does not

4

have standing to bring his claim because Great American "induced Richard by its actions to believe that he had authority to bring a claim under the policy of insurance." (Doc. 60 at 9-13).

QBE filed its motion to dismiss Richard's complaint on June 14, 2018 (Doc. 47) and after Richard amended his complaint a second time, filed a substantively identical motion to dismiss on November 26, 2018 (Doc. 75). QBE argues that Richard has failed to state a claim upon which relief can be granted because it is undisputed that QBE mailed the notice of cancellation of the QBE insurance policy to Richard's Flushing, NY address on file with QBE. (Doc. 75-2 at 5-6). Richard responds that he properly alleged in his complaint that QBE failed to provide the required notice and that QBE knew or should have known that Richard had moved from Flushing to Jim Thorpe because Richard's insurance agent, Progressive Insurance, knew of his relocation. (Doc. 77 at 11-13).

Magistrate Judge Carlson issued an R&R on January 7, 2019 that largely adopts the arguments set forth by Great American and QBE in their motions to dismiss. (Doc. 78). The R&R recommends granting both Great American's and QBE's motions to dismiss and affording Richard an opportunity to amend his complaint, but only with respect to his claims against QBE. (*Id.* at 25). Richard timely filed Objections to the R&R with respect to the R&R's recommendations related to Great American's motion to dismiss. (Doc. 82). These Objections restate the arguments Richard originally raised against the motion to dismiss.

Great American timely filed a response to the Objections, reiterating its same arguments. (Doc. 85).[3]

## III. LEGAL STANDARD

A District Court may "designate a magistrate judge to conduct hearings, including evidentiary hearings, and to submit to a judge of the court proposed findings of fact and recommendations for the disposition" of certain matters pending before the Court. 28 U.S.C. § 636(b)(1)(B). If a party timely and properly files a written objection to a Magistrate Judge's Report and Recommendation, the District Court "shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." *Id.* at § 636(b)(1)(C); *see also* Fed. R. Civ. P. 72(b)(3); M.D. Pa. Local Rule 72.3; *Brown v. Astrue*, 649 F.3d 193, 195 (3d Cir. 2011). "If a party does not object timely to a magistrate judge's report and recommendation, the

---

[3] The Court notes that the record in this matter has become somewhat muddled. Richard filed his original complaint on March 8, 2018. (Doc. 1). He then filed his First Amended Complaint on May 31, 2018. (Doc. 33). Great American and QBE filed motions to dismiss the First Amended Complaint. (Doc. 44, Doc. 47). Subsequently, Richard dismissed Progressive Insurance as a defendant (Doc. 64, Doc. 65) and sought and was granted leave to file a Second Amended Complaint (Doc. 69, Doc. 70) against Ocwen. The First Amended Complaint and Second Amended Complaint are identical with respect to claims against Great American and QBE. For this reason, Great American sought and was granted leave to treat its motion to dismiss the First Amended Complaint as its motion to dismiss the new operative Second Amended Complaint. (Doc. 72, Doc. 73). However, QBE did not follow this course and instead filed a new motion to dismiss the Second Amended Complaint (Doc. 74). QBE's motion to dismiss the Second Amended Complaint is substantively identical to its motion to dismiss the First Amended Complaint, and Richard likewise filed an opposition brief that is substantively identical to his previous opposition brief (Doc. 77). Despite the Second Amended Complaint, with QBE's accompanying motion to dismiss, being the operative filings in this matter, the R&R incorrectly refers to QBE's previous motion to dismiss, Document 47. The Court will treat this mistake as a scrivener's error and will apply the R&R's analysis with respect to QBE's operative motion to dismiss, Document 74. Perhaps due to confusion, Richard failed to file objections with respect to the R&R's findings regarding QBE's motion to dismiss. While Richard should have filed such objections or at least sought clarification from the Court, the Court's analysis of the R&R's findings relating to QBE are the same under either a *de novo* or clear error standard of review.

6

party may lose its right to de novo review by the district court." *EEOC v. City of Long Branch*, 866 F.3d 93, 99-100 (3d Cir. 2017). However, "because a district court must take some action for a report and recommendation to become a final order and because the authority and the responsibility to make an informed, final determination remains with the judge, even absent objections to the report and recommendation, a district court should afford some level of review to dispositive legal issues raised by the report." *Id.* at 100 (internal citations and quotation marks omitted).

A complaint must be dismissed under Federal Rule of Civil Procedure 12(b)(6) if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal citations, alterations, and quotations marks omitted). A court "take[s] as true all the factual allegations in the Complaint and the reasonable inferences that can be drawn from those facts, but . . . disregard[s] legal conclusions and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Ethypharm S.A. France v. Abbott Labs.*, 707

F.3d 223, 231 n.14 (3d Cir. 2013) (internal citation, alteration, and quotation marks omitted).

Thus, "the presumption of truth attaches only to those allegations for which there is

sufficient 'factual matter' to render them 'plausible on [their] face.'" *Schuchardt v. President*

*of the U.S.*, 839 F.3d 336, 347 (3d Cir. 2016) (alteration in original) (quoting *Iqbal*, 556 U.S.

at 679). "Conclusory assertions of fact and legal conclusions are not entitled to the same

presumption." *Id.*

"Although the plausibility standard 'does not impose a probability requirement,' it

does require a pleading to show 'more than a sheer possibility that a defendant has acted

unlawfully.'" *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (internal

citation omitted) (first quoting *Twombly*, 550 U.S. at 556; then quoting *Iqbal,* 556 U.S. at

678). "The plausibility determination is 'a context-specific task that requires the reviewing

court to draw on its judicial experience and common sense.'" *Id.* at 786-87 (quoting

*Iqbal,* 556 U.S. 679).

However, even "if a complaint is subject to Rule 12(b)(6) dismissal, a district court

must permit a curative amendment unless such an amendment would be inequitable or

futile." *Phillips v. Cty. of Allegheny,* 515 F.3d 224, 245 (3d Cir. 2008).

> [E]ven when plaintiff does not seek leave to amend his complaint after a
> defendant moves to dismiss it, unless the district court finds that amendment
> would be inequitable or futile, the court must inform the plaintiff that he or she
> has leave to amend the complaint within a set period of time.

*Id.*

8

## IV. ANALYSIS

The Court adopts the reasoning of the R&R with respect to both Great American's and QBE's motions to dismiss and will grant the motions. The Court also adopts the recommendations of the R&R to grant Great American's motion to dismiss with prejudice and to grant QBE's motion to dismiss without prejudice to afford Richard an opportunity to amend his complaint with respect to his claim against QBE.

### A. GREAT AMERICAN'S MOTION TO DISMISS

The R&R recommends granting Great American's motion to dismiss Richard's breach of contract and bad faith claims because the Great American policy does not list Richard as an insured party, nor does Richard establish, as he asserts, that he is somehow otherwise a third-party beneficiary to the policy. (Doc. 78 at 16-24). The Court agrees.

The starting point of the Court's analysis is the forced-placed insurance policy, attached to the complaint. (Doc. 67-4); *U.S. Express Lines Ltd. v. Higgins*, 281 F.3d 383, 388 (3d Cir. 2002) (court can consider attachments to a complaint when deciding a motion to dismiss). The interpretation of an insurance policy is a matter of law for the Court. *Lomma v. Ohio Nat'l Life Assurance Corp.*, 329 F. Supp. 3d 78, 87 (M.D. Pa. 2018) (citing *Minnesota Fire & Cas. Co. v. Greenfield*, 855 A.2d 854, 861 (Pa. 2004)). The Court interprets the intent of the parties to the insurance policy contract by examining the terms of the policy. *Lomma*, 329 F. Supp. 3d at 87 (citing *Donegal Mut. Ins. Co. v. Baumhammers*, 938 A.2d 286, 290 (Pa. 2007)). "[W]hen a written contract is clear and unequivocal, its meaning must be determined by its contents alone. It speaks for itself and a meaning

9

cannot be given to it other than that expressed." *Lesko v. Frankford Hosp.-Bucks Cty.,* 15

A.3d 337, 342 (Pa. 2011) (quoting *Steuart v. McChesney,* 444 A.2d 659, 661 (Pa. 1982)).

"The language of a policy may not be tortured, however, to create ambiguities where none

exist." *Pacific Indem. Co. v. Linn,* 766 F.2d 754, 760-61 (3d Cir. 1985) (citing *Houghton v.*

*Am. Guar. Life Ins. Co.,* 692 F.2d 289, 291 (3d Cir. 1982)).

As detailed by Great American in its brief supporting its motion to dismiss and

Magistrate Judge Carlson in the R&R, the Great American policy is quite clear that only

Finance of America, the mortgagee, is an insured party. The first page of the policy states

that Finance of America is the "named insured," the policy is entitled "MORTGAGE

PROTECTION INSURANCE," and a disclaimer states that:

> **Unless indicated otherwise by endorsement, this policy does not
> provide coverage for flood, earth movement, contents, errors &
> omissions liability, nor does it provide coverage for the interest or
> equity of the mortgagor. This is creditor placed insurance, protecting
> your mortgagee interest, subject to policy terms and conditions. Please
> read your policy for specific terms and conditions of coverage.**

(Doc. 67-4 at 1 (bold font in original)). The "Definitions" section of the policy defines the

"**Named Insured**" as the "creditor, lending institution, company, or person holding or

servicing the **mortgagee interest** on the **described location**." (*Id.* at 2). "**Mortgagee**

**interest** means [the Named Insured's] interest in the **described location** under a

**mortgage agreement**, including the **mortgagee interest** of others [the Named Insured]

service[s] under a written servicing agreement." (*Id.*) The "Definitions" section further

states that the "**mortgagor** . . . the purchaser of the **described location** for whom [the

10

Named Insured] has financed property or [for] which [the Named Insured] [is] servicing for others under the terms of a written agreement . . . is not a **Named Insured** under this policy." (*Id.*) And in numerous places within the policy documents, it is emphasized that the purpose of the policy is to protect the "**mortgagee interest**" in a situation, where, as here, "**acceptable hazard insurance**" has been cancelled or not received from the mortgagor. (*Id.* at 2, 3, 9-11, 16). Thus, by the express terms of the Great American policy, Richard is not a party to the policy and cannot bring a claim for breach of contract or bad faith against Great American. *See, e.g., Scarpitti v. Weborg*, 609 A.2d 147, 149-50 (Pa. 1992) (breach of contract); *Seasor v. Liberty Mut. Ins. Co.*, 941 F. Supp. 488, 490-91 (E.D. Pa. 1996) (bad faith).

Nor, as Magistrate Judge Carlson properly concludes in the R&R, is Richard a third-party beneficiary of the forced-placed insurance policy, which would provide him another avenue to bring his breach of contract and bad faith claims against Great American. "[U]nder Pennsylvania law, 'in order for a third party beneficiary to have standing to recover on a contract, both contracting parties must have expressed an intention that the third-party be a beneficiary, and that intention must have affirmatively appeared in the contract itself.'" *Sovereign Bank v. BJ's Wholesale Club, Inc.*, 533 F.3d 162, 168 (3d Cir. 2008) (citing *Scarpitti*, 609 A.2d at 149); *see also Burks v. Fed. Ins. Co.*, 883 A.2d 1086, 1088 (Pa. Super. Ct. 2005) (noting it is necessary that "such intent [to treat one as a third-party beneficiary] was within the parties' contemplation at the time the contract was

11

formed"). Additionally, under Pennsylvania's adoption of Section 302 of the Restatement

(Second) of Contracts:

> [the] plaintiff must show '(1) the recognition of the beneficiary's right must be appropriate to effectuate the intention of the parties, and (2) the performance must satisfy an obligation of the promisee to pay money to the beneficiary or the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance.' *Shumate v. Twin Tier Hosp., LLC*, 655 F. Supp. 2d 521, 535 (M.D. Pa. 2009) (internal citations omitted).

*New Prime, Inc. v. Brandon Balchune Constr., Inc.*, No. 14-cv-2410, 2017 WL 6419281, at

*5 (M.D. Pa. Dec. 15, 2017) (also citing *Scarpitti*, 609 A.2d at 149-50). As detailed above,

the forced-placed insurance policy clearly expresses that the policy only covers Finance of

America's mortgagee interest in the Jim Thorpe premises.

In his Objections to the R&R, Richard points to language in the Great American

policy and to the conduct of Great American to argue that the policy at least impliedly grants

him standing as a third-party beneficiary. (Doc. 82-1 at 12-17). Specifically, Richard

contends that because the policy authorizes the mortgagor to submit a claim on behalf of

the mortgagee and because Great American made payments on the claims Richard

submitted, he is a third-party beneficiary. (*Id.* at 12-14). As the R&R states, this argument

is a logical non-sequitur, as the facts pled by Richard do not demonstrate that either Great

American or Finance or America, let alone both entities, intended at the time they entered

into the insurance contract that Richard should be a beneficiary of the forced-placed

insurance policy. (Doc. 78 at 19-20, 22-23). At most, Richard is an incidental beneficiary of

the policy. He merely acted as Finance of America's agent in submitting the claims to Great

12

American, and Great American paid Finance of America, not Richard, to cover Finance of America's interest in the Jim Thorpe premises. (See Doc. 69 ¶¶ 31-32). Finance of America passed through these payments to Richard for repairs to the property, but Richard does not establish that these passthrough payments convert him into an intended third-party beneficiary. As noted in the documents Richard attached to his complaint, Great American's agents interacted with Richard in his role as the submitter of claims on behalf of Finance of America. In particular, Great American's claims administrator, Seattle Specialty Insurance Services, informed Richard's counsel in a July 13, 2016 letter that Richard is not the named insured on the policy:

> On July 1, 2016 Seattle Specialty Insurance Services received a copy of your letter regarding the above-captioned claim. Unfortunately, we will be unable discuss [sic] the outcome of our investigation with you as Finance of America Mortgage LLC is the named insured on this policy. A letter will be going out to our insured once our investigation is complete.

(Doc. 67-5 at 1). Similarly, subsequent communications between Richard's counsel and another of Great American's claims administrators, National General Lender Services, regarding the claims that Richard submitted on behalf of Finance of America, also do not establish that Richard is a third-party beneficiary. (Doc. 67-9).

Finally, Richard raises two other related arguments not specifically addressed in the R&R to establish his standing to sue Great American under the forced-placed insurance policy, but neither of these arguments disturb the conclusion that he does not possess such standing. First, Richard argues that Great American should be equitably estopped from arguing that Richard does not have standing as a third-party beneficiary because its agents

13

interacted with Richard regarding the claims Richard submitted and payments were made

on those claims. (Doc. 82-1 at 14-16). Richard contends that this conduct:

> induced Richard by its actions to believe he had authority to bring a claim
> under the policy of insurance. If GREAT AMERICAN had informed Richard
> during the claims process that he was not permitted to submit a claim he
> would have requested that FINANCE OF AMERICA be joined as an
> additional Plaintiff in the instant action.

(*Id.* at 15). "Under Pennsylvania law, equitable estoppel consists of three elements: '1)

misleading words, conduct, or silence by the party against whom the estoppel is asserted;

2) unambiguous proof of reasonable reliance upon the misrepresentation by the party

asserting estoppel; and 3) the lack of a duty to inquire on the party asserting the

estoppel.' *Chester Extended Care Ctr. v. Pennsylvania Dep't of Pub. Welfare,* 526 Pa. 350,

586 A.2d 379, 382 (1991)." *Wayne Moving & Storage of New Jersey, Inc. v. Sch. Dist. of*

*Philadelphia,* 625 F.3d 148, 155 (3d Cir. 2010). Here, Richard has not pled facts to

establish any of the three required elements of equitable estoppel. As detailed above, the

communications between Richard's counsel and Great American's claims representatives

do not show any misrepresentations made by Great American to Richard that would lead

Richard to believe he is a third-party beneficiary of the forced-placed insurance policy. The

clear and explicit language of the policy that Richard is not a named insured on the policy

and that the policy is only for the benefit of Finance of America also indicate that Richard

was on notice that the policy does not cover his interest in the Jim Thorpe premises. As a result, Richard cannot assert equitable estoppel against Great American.[4]

Second, Richard contends that an endorsement to the forced-placed insurance policy, which provides for coverage of contents within the Jim Thorpe premises, evidences that the policy is intended to benefit him because "his lender could not have an interest in [the] contents." (Doc. 82-1 at 16-17). As Great American points out in their response to Richard's Objections, however, this endorsement only applies in instances where the mortgagee ends up obtaining an ownership interest in the property as part of the "Real Estate Owned" coverage component of the policy. (Doc. 85 at 9-10, Doc. 67-4 at 1-2, 4, 20).

In sum, the R&R is correct in recommending dismissal of Richard's claims against Great American with prejudice. Accordingly, the Court will grant Great American's motion to dismiss.

## B. QBE'S MOTION TO DISMISS

The R&R also recommends granting QBE's motion to dismiss Richard's breach of contract claim, reasoning that Richard has failed to plead that QBE did not follow the proper

---

[4] Even if Richard could assert equitable estoppel against Great American, this would not establish a right to sue Great American in the name of Finance of America or to somehow join Finance of America as an additional plaintiff, as Richard requests in his Objections to the R&R and which Richard has already attempted to do in his complaint by labelling his claims as brought individually and on behalf of Finance of America. (Doc. 69 ¶¶ 60-70, Doc. 82-1 at 16). Finance of America is already a party to this action as a named defendant and thus cannot be joined as an involuntary plaintiff. *Dublin Water Co. v. Delaware River Basin Comm'n*, 443 F. Supp. 310, 315 (E.D. Pa. 1977) (citing *Independent Wireless Tel. Co. v. Radio Corp. of America*, 269 U.S. 459 (1926)) (interpreting Fed. R. Civ. P. 19(a) and noting that an involuntary plaintiff can only be joined "where the party sought to be joined as an involuntary plaintiff is beyond the jurisdiction of the Court and is notified of the action but refuses to join, and where the party seeking such joinder is entitled to use the non-party's name to prosecute the action").

cancellation procedures outlined in the QBE policy before cancelling Richard's home insurance policy. (Doc. 78 at 12-13). These procedures include providing required notice to Richard. (Doc. 67-3 at 26-27). QBE asserts that Richard admits in the complaint these procedures were followed because QBE sent a notice of cancellation to the Flushing, NY address on file with QBE. (Doc. 78 at 11). The R&R states that, to the extent Richard pleads facts to allege that QBE did not follow the cancellation procedures, these facts are presented by way of argument in Richard's opposition to QBE's motion to dismiss and not in the complaint. (*Id.* at 14-15). The R&R recommends affording Richard an opportunity to amend his complaint to allege sufficient facts to plead that QBE breached the policy by not following the required cancellation procedures. (*Id.* at 15-16). The Court agrees with this recommendation.

The R&R accurately sets forth Pennsylvania law on alleging breach of contract in an insurance action:

> To state a claim for breach of contract under Pennsylvania law, a plaintiff "must plead: (1) the existence of a contract, including its essential terms; (2) a breach of a duty imposed by the contract; and (3) resultant damage." *Papurello v. State Farm Fire & Cas. Co.*, 144 F. Supp. 3d 746, 762 (W.D. Pa. 2015) (quoting *Kane v. State Farm Fire & Cas. Co.*, 841 A.2d 1038, 1042 (Pa. Super. Ct. 2003)). To effect cancellation of an insurance policy, Pennsylvania law requires that the conditions "incident to the right to do so must be strictly complied with." *Coppola v. Ins. Placement Facility of Pennsylvania*, 563 A.2d 134, 136 (Pa. 1989). Under Pennsylvania law, where the insurer argues cancellation as an affirmative defense, the insurer bears the burden of proving an effective cancellation prior to an insured's loss. *Blasy v. Chester Cty. Mut. Ins. Co.*, 585 A.2d 493, 495 (Pa. Super. Ct. 1990) (citing *Coppola*, 563 A.3d at 136).

(Doc. 78 at 12-13 (internal citations corrected)). Additionally, with respect to "any policy of insurance covering owner-occupied private residential properties or personal property of individuals that has been in force for sixty days or more," an insurer cannot cancel or refuse to renew the policy "unless a written notice of the cancellation or refusal to renew is received by the insured either at the address shown in the policy or at a forwarding address." 40 Pa. Stat. and Cons. Stat. Ann. § 1171.5(a)(9) (further stating that such cancellation or refusal to renew shall not become effective until a date not less than thirty days after the date of delivery or mailing of the notice), (c)(1) (noting that insurer can also mail a "renewal premium notice to the insured not less than thirty days in advance of the expiration date of the policy").[5] The QBE policy tracks these requirements. (Doc. 67-3 at 26-27).

Here, Richard has alleged in the complaint that Ocwen and/or Finance of America failed to pay his renewal premiums to QBE. (Doc. 69 ¶ 20). He further alleges that he believes QBE sent a notice of cancellation to Richard's previous address in Flushing, NY, "despite the fact that QBE [was] aware that Richard had moved to the [Jim Thorpe premises]." (Id. ¶¶ 21-22). However, as the R&R states, the QBE policy lists the Flushing, NY address as Richard's mailing address, and Richard does not specifically allege "that he notified QBE that he had changed his address or that he provided a forwarding address in

---

[5] These requirements come from the Unfair Insurance Practices Act, 40 Pa. Stat. and Cons. Stat. Ann. §§ 1171.1-1171.15, which prohibits unfair methods of competition or unfair or deceptive acts or practices in the business of insurance. This statute does not provide for a private right of action and is instead enforced by the Pennsylvania state insurance commissioner. 40 Pa. Stat. and Cons. Stat. Ann. § 1171.7; *Albert v. Erie Ins. Exch.*, 65 A.3d 923, 931 (Pa. Super. Ct. 2013) (citing *Cresswell v. Pennsylvania Nat'l. Mut. Cas. Ins. Co.*, 820 A.2d 172, 180 n.4 (Pa. Super. Ct. 2003)).

accordance with the plain terms of the parties' insurance agreement." (Doc. 78 at 13-14).
While Richard argues in his opposition to QBE's motion to dismiss that QBE should have
been aware of his move from Flushing to Jim Thorpe because his insurance agent,
Progressive, knew of his move (Doc. 77 at 12-13), the R&R properly concludes that this is
not a substitute for absent allegations in the complaint (Doc. 78 at 14-15). Accordingly, the
Court will adopt the R&R's recommendation to grant QBE's motion to dismiss without
prejudice and will afford Richard an opportunity to amend his complaint with respect to his
breach of contract claim against QBE.

## V. Conclusion

For the reasons discussed above, the Court will adopt the R&R. Great American's
and QBE's respective motions to dismiss will be granted, and Plaintiff will be provided with
leave to amend his Complaint only with respect to his claim against QBE. A separate Order
follows.

Robert D. Mariani
United States District Judge

18