# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **WILSON P. RICHARD,** | : | Civil No. 3:18-CV-559 |
| | : | |
| **Plaintiff** | : | |
| | : | |
| v. | : | (Magistrate Judge Carlson) |
| | : | |
| **FINANCE OF AMERICA** | : | |
| **MORTGAGE, LLC formerly known** | : | |
| **as GATEWAY FUNDING** | : | |
| **DIVERSIFIED MORTGAGE** | : | |
| **SERVICES, LP; OCWEN LOAN** | : | |
| **SERVICING, LLC; QBE INSURANCE** | : | |
| **CORPORATION; PROGRESSIVE** | : | |
| **SPECIALITY INSURANCE** | : | |
| **AGENCY, INC.; and GREAT** | : | |
| **AMERICAN ASSURANCE** | : | |
| **COMPANY,** | : | |
| | : | |
| **Defendants** | : | |

## MEMORANDUM OPINION

### I.   Factual Background and Procedural History

This case presents a homeowner's nightmare scenario. The plaintiff, Wilson P. Richard, purchased a home in December 2014, obtaining a mortgage through Finance of America (FOA), which was formerly known as Gateway Funding. In what is a commonplace practice, the mortgage financing included escrow provisions allowing the loan servicer to retain funds to pay real estate taxes and homeowner

insurance. In what is yet another common practice in this industry, after making this mortgage loan, FOA sold the loan to another loan servicer, Ocwen, in January of 2015. Ocwen, in turn, sold the loan back to FOA in early December of 2015.

What then followed were a series of mistakes, mishaps, misadventures and miscommunications which set the stage for this lawsuit. When Ocwen transferred Richard's mortgage back to FOA in early December 2015, according to Richard and FOA, it misstated the status of the escrow account. FOA, which was at that point responsible for servicing Richard's mortgage, then failed in mid-December 2015 to make the required insurance premium payment from the escrow account to ensure continuation of Richard's home owner policy and that policy was cancelled. Through additional mishaps and miscommunications, it is alleged that notice of this cancellation was not timely received by Richard or FOA. Instead, Richard and FOA now seem to acknowledge that the first notice they received of the cancellation of this insurance occurred in March of 2016, following an incident in which Richard's home suffered significant water damage.

When Richard reached out to what he believed was his homeowner insurance company to report this damage and make an insurance claim, he learned to his dismay that the policy had lapsed and that Richard could only renew the policy if he first paid for the water damage which had occurred in March of 2016 out of his own resources. Richard then contacted FOA, the loan servicer, who arranged for the

substitution of a lender force-placed insurance policy[1] on this property. For Richard, this force-placed insurance was an inadequate solution to the dilemma created by the cancellation of his original insurance policy. The force-placed insurance provided less coverage and only protected the interest of the mortgagee, not Richard's equity interest in the home. Thus, it provided little comfort to Richard, the mortgagor. According to Richard, these inadequacies were further highlighted in February 2017 when he suffered a second significant, and largely uncompensated, water damage incident at his home. As a result, Richard alleges that he has suffered losses totaling $77,000.

In the face of this cascading array of homeowner hardships, Richard has pursued litigation searching for culpable parties who may be responsible for the losses he has suffered. Richard's complaint, which was amended three times, (Docs. 1, 33, 69, 93), recites that Richard has been harmed by this course of conduct that resulted in the cancellation of his original homeowner's insurance and the substitution of a lender force-placed insurance policy in 2016, which provided him with less coverage at the time that he experienced property damage losses in 2016 and 2017. Richard pursued these claims in a global, comprehensive fashion,

---

[1] "[T]he term 'force-placed insurance' means hazard insurance obtained by a servicer on behalf of the owner or assignee of a mortgage loan that insures the property securing such loan." 12 C.F.R. § 1024.37(a)(1).

bringing this action against his mortgagee, FOA; a mortgage servicing company, Ocwen; two insurance companies; and an insurance agency, seeking damages he claims he is owed for water damage to his home. Richard sued these parties collectively in an attempt to affix blame upon at least one of these companies so that he can be indemnified against the losses he claims he incurred. Given the complex, intertwined relationship between these various insurance companies and loan servicers who handled aspects Richard's mortgage and insurance, it is hardly surprising that the defense to Richard's claims also involved cross-claims between some of these defendants, who blamed one another for the errors that led to the cancellation of this insurance coverage. Thus, as part of its defense to this lawsuit, Finance of America, LLC, lodged a cross claim against Ocwen which asserted that the failure to renew this policy was Ocwen's fault, since Ocwen had provided erroneous information to FOA in early December 2015 when it returned Richard's loan to FOA. FOA then asserted contractual and common law rights to indemnification against Ocwen. (Doc. 76).

With the claims and defenses framed in this fashion, Ocwen moved to dismiss Richard's complaint against it, alleging that there was no direct causal connection between Ocwen's conduct and any injury suffered by the plaintiff since Ocwen had totally surrendered its legal and contractual loan servicing responsibilities to FOA prior to any of the events which led to the losses suffered by the plaintiff. The court

agreed and dismissed Ocwen as a defendant in August of 2019. Richard v. Fin. of Am. Mortg., LLC, No. 3:18-CV-559, 2019 WL 3756895, at *1 (M.D. Pa. July 23, 2019), report and recommendation adopted sub nom. Richard v. Fin. of Am. Mortgages, LLC, No. 3:18-CV-559, 2019 WL 3753682 (M.D. Pa. Aug. 8, 2019).

While this ruling clarified Ocwen's legal status *vis-a-vis* Richard, there was a latent ambiguity in this dismissal order. Although this order found that the plaintiff's claims against Ocwen were too legally, logically, and temporally remote to state a claim upon which relief may be granted in favor of the plaintiff, it did not speak to FOA's cross-claim for indemnification from Ocwen. (Doc. 76). This ambiguity inspired FOA to file a motion to clarify Ocwen's status as a cross-claim defendant, (Doc. 120), which Ocwen opposed. (Docs. 120-22). Recognizing this ambiguity, we ordered FOA to file a motion to reinstate its cross claim and authorized Ocwen to move to dismiss this cross-claim if it deemed the cross-claim to be legally insufficient.

The parties have taken up our invitation, filing motions to reinstate, (Doc. 126), and dismiss, (Doc. 129), this cross-claim. These motions are fully briefed and are, therefore, ripe for resolution.

For the reasons set forth below, it is ordered as follows:

First, FOA's motion to reinstate, (Doc. 126), is GRANTED.

Second, Ocwen's motion to dismiss, (Doc. 129), is DENIED without prejudice to renewal of the motion through a fully documented motion for summary judgment.

Third, within 21 days, FOA shall provide a more definite statement of its indemnification claim providing Ocwen with specific reference to the contractual basis for indemnification in this case.

## II. Discussion

### A. The Dismissal of Richard's Complaint Against Ocwen Did Not Extinguish FOA's Cross-Claim for Indemnification.

The procedural posture of this case and the parties' competing motions present us with a threshold legal issue: does the dismissal of the plaintiff's complaint against Ocwen also, as a matter of law, extinguish FOA's cross-claim for indemnification from Ocwen?

We find that it does not. Where a defendant's cross-claims against another defendant were dependent upon the viability of the plaintiff's underlying claims, some courts have suggested that dismissal of the plaintiff's complaint extinguishes the cross-claim as well. See generally Paws Up Ranch, LLC v. Green, No. 2:12-CV-01547-GMN-NJ, 2014 WL 4828934, at *4 (D. Nev. Sept. 30, 2014). However, the Third Circuit Court of Appeals has adopted a contrary view, and has long held that: "(A) dismissal of the original complaint as to one of the defendants named therein does not operate as a dismissal of a cross-claim filed against such defendant by a

codefendant." Fairview Park Excavating Co. v. Al Monzo Const. Co., 560 F.2d 1122, 1125 (3d Cir. 1977) (citing Aetna Insurance Co. v. Newton, 398 F.2d 729, 734 (3d Cir. 1968)).

In our view, this principle controls here with respect to FOA's motion to reinstate its cross-claim. Since Third Circuit precedent clearly indicates that the dismissal of the plaintiff's complaint against Ocwen does not operate as a dismissal of the cross-claim lodged by FOA against Ocwen for indemnification, the motion to reinstate will be granted, and Ocwen will be identified as a cross-claim defendant in this lawsuit.

In reaching this result, we are mindful of the fact that there has been some significant delay on FOA's part in bringing this ambiguity to our attention, and we acknowledge that Ocwen cites this delay as grounds for denying this request to reinstate the cross-claim. However, we conclude that the ambiguity was not solely a function of inaction by FOA; it was also a creature of imprecision by the court when we addressed Ocwen's motion to dismiss Richard's complaint. Our failure at that time to clearly distinguish between Richard's complaint and FOA's cross-claim added to this ambiguity. Given that the law clearly favors resolution of legal issues on their merits, and acknowledging that our own actions contributed to this ambiguity, we have concluded that we should pursue a merits-driven analysis of this cross-claim.

We have also considered Ocwen's argument that the law of the case, as defined by our order dismissing Richard's complaint against this defendant, also bars reinstatement of this cross-claim, but we decline to follow this course in light of the explicit Third Circuit holdings which confirm that "dismissal of the original complaint as to one of the defendants named therein does not operate as a dismissal of a cross-claim filed against such defendant by a codefendant." Fairview Park Excavating Co. v. Al Monzo Const. Co., 560 F.2d 1122, 1125 (3d Cir. 1977) (citing Aetna Insurance Co. v. Newton, 398 F.2d 729, 734 (3d Cir. 1968)). In any event, we note that our dismissal of Richard's claims against Ocwen was based upon a finding that Ocwen was not the loan servicer at the time of the events which led to the plaintiff's injuries. Therefore, Richard and Ocwen did not enjoy a contractual relationship at that time. In contrast, the gist of FOA's cross-claim against Ocwen is that there was a contractual commitment to indemnify that existed between these two entities. These are distinct issues, and our resolution of Richard's claims cannot be seen as a commentary upon the entirely separate question of whether there was an enforceable agreement between Ocwen and FOA to indemnify FOA for claims arising out of the handling of this loan.

While this threshold ruling defines for us the ability of FOA to maintain this cross-claim following the dismissal of Richard's complaint against Ocwen, we now

turn to Ocwen's motion to dismiss, which invites us to consider the legal sufficiency of the cross-claim as it is currently pleaded.

> **B. Ocwen's Motion to Dismiss this Cross-claim Will Be Denied Without Prejudice to Renewal Through a Properly Documented Summary Judgment Motion, But FOA Will be Required to Provide a More Definite Statement of its Contractual Indemnification Claim.**

Any analysis of the legal sufficiency of FOA's cross-claim must begin with an evaluation of the cross-claim itself. In this case, FOA's cross-claim against Ocwen alleges as follows;

CROSSCLAIMS FOR INDEMNIFICATION AGAINST CO-DEFENDANT OCWENLOAN SERVICING LLC

Defendant Finance of America Mortgage LLC, formerly known as Gateway Funding Diversified Mortgage Services, LP ("FoAM"), by and through undersigned counsel, hereby asserts crossclaims for indemnification against co-defendant Ocwen Loan Servicing LLC("Ocwen") as follows:

FIRST COUNT
(Crossclaim for Contractual Indemnification)

1. FoAM denies any and all legal liability and responsibility for the acts alleged in the SAC [Second Amended Complaint].

2. Plaintiff alleges he sustained damages based on a failure to renew the one-year hazard insurance policy issued at the time the subject mortgage loan was originated with FoAM.

3. To the extent there was a duty for the lender and/or servicer of the subject mortgage loan to renew the policy, and a failure to renew this policy did in fact occur, such failure would be attributable solely to the action/inaction of co-defendant Ocwen.

> 4.Pursuant to a certain contractual agreement (the "Agreement") between FoAM and Ocwen, Ocwen is contractually obligated to defend and indemnify FoAM with respect to the claims asserted by Plaintiff.
>
> 5.If FoAM should be found liable to Plaintiff, which liability is denied, FoAM asserts that Ocwen is liable due to its breach of its contractual duty under the Agreement with respect to any loss, liability or expense incurred or sustained by FoAM.
>
> WHEREFORE, FoAM demands judgment against Ocwen pursuant to and in accordance with the Agreement, for indemnification on any loss, liability or expense incurred on behalf of Plaintiff's claims against FoAM.
>
> SECOND COUNT
> (Crossclaim for Common Law Indemnification)
>
> 6.FoAM repeats and realleges the allegations of the First Count of the Crossclaims as if repeated at length herein.
>
> 7.If FoAM should be found liable to Plaintiff, which liability is denied, then said liability will only be secondary, passive, technical, vicarious and imputed and the liability of Ocwen is primary, active and direct.
>
> WHEREFORE, Defendant demands judgment against Ocwen for indemnification in full with respect to any damages which may be recovered against FoAM by Plaintiff, together with the costs and expenses of defending against this suit.

(Doc. 76 at 8-9).

Ocwen has moved to dismiss this cross-claim, arguing that these averments are legally insufficient. We disagree. A motion to dismiss tests the legal sufficiency of a pleading. It is proper for the court to dismiss a complaint or cross-claim in accordance with Rule 12(b)(6) of the Federal Rules of Civil Procedure only if the pleading fails to state a claim upon which relief can be granted. Fed. R. Civ. P.

12(b)(6). With respect to this benchmark standard for the legal sufficiency of a pleading, the United States Court of Appeals for the Third Circuit has aptly noted the evolving standards governing pleading practice in federal court, stating that:

> Standards of pleading have been in the forefront of jurisprudence in recent years. Beginning with the Supreme Court's opinion in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), continuing with our opinion in Phillips [v. County of Allegheny, 515 F.3d 224, 230 (3d Cir. 2008)], and culminating recently with the Supreme Court's decision in Ashcroft v. Iqbal, –U.S.–, 129 S. Ct. 1937 (2009), pleading standards have seemingly shifted from simple notice pleading to a more heightened form of pleading, requiring a plaintiff to plead more than the possibility of relief to survive a motion to dismiss.

Fowler v. UPMC Shadyside, 578 F.3d 203, 209-10 (3d Cir. 2009).

In considering whether a complaint or cross-claim fails to state a claim upon which relief may be granted, the court must accept as true all allegations in the pleading and all reasonable inferences that can be drawn therefrom are to be construed in the light most favorable to the party who is asserting the claim. Jordan v. Fox, Rothschild, O'Brien & Frankel, Inc., 20 F.3d 1250, 1261 (3d Cir. 1994). However, a court "need not credit . . . bald assertions or legal conclusions when deciding a motion to dismiss." Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997). Additionally, a court need not "assume that a . . . [party] can prove facts that the . . . [party] has not alleged." Associated Gen. Contractors of Cal. v. California State Council of Carpenters, 459 U.S. 519, 526 (1983). As the Supreme Court held in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), in order to state

11

a valid cause of action, a party must provide some factual grounds for relief which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of actions will not do." Id., at 555. "Factual allegations must be enough to raise a right to relief above the speculative level." Id.

In keeping with the principles of Twombly, the Supreme Court has underscored that a trial court must assess whether a complaint or cross-claim states facts upon which relief can be granted when ruling on a motion to dismiss. In Ashcroft v. Iqbal, 556 U.S. 662 (2009), the Supreme Court held that, when considering a motion to dismiss, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Id., at 679. According to the Supreme Court, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id., at 678. Rather, in conducting a review of the adequacy of a complaint or cross-claim, the Supreme Court has advised trial courts that they must:

> [B]egin by identifying pleadings that because they are no more than conclusions are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

Id., at 679.

Thus, following Twombly and Iqbal, a well-pleaded complaint or cross-claim must contain more than mere legal labels and conclusions; it must recite factual

allegations sufficient to raise the claimed right to relief beyond the level of mere speculation. As the United States Court of Appeals for the Third Circuit has stated:

> [A]fter Iqbal, when presented with a motion to dismiss for failure to state a claim, district courts should conduct a two-part analysis. First, the factual and legal elements of a claim should be separated. The District Court must accept all of the . . .well-pleaded facts as true, but may disregard any legal conclusions. Second, a District Court must then determine whether the facts alleged . . . are sufficient to show that the [party] has a "plausible claim for relief.".

Fowler, 578 F.3d at 210-11.

As the Court of Appeals has observed:

> The Supreme Court in Twombly set forth the "plausibility" standard for overcoming a motion to dismiss and refined this approach in Iqbal. The plausibility standard requires the [pleading] to allege "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570, 127 S. Ct. 1955. A [pleading] satisfies the plausibility standard when the factual pleadings "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S. Ct. at 1949 (citing Twombly, 550 U.S. at 556, 127 S. Ct. 1955). This standard requires showing "more than a sheer possibility that a defendant has acted unlawfully." Id. A [pleading] which pleads facts "merely consistent with" a defendant's liability, [ ] "stops short of the line between possibility and plausibility of 'entitlement of relief.' "

Burtch v. Milberg Factors, Inc., 662 F.3d 212, 220-21 (3d Cir. 2011), cert. denied, 132 S. Ct. 1861 (2012).

In practice, consideration of the legal sufficiency of a complaint or cross-claim entails a three-step analysis:

> First, the court must "tak[e] note of the elements a [party] must plead to state a claim." Iqbal, 129 S. Ct. at 1947. Second, the court should identify allegations that, "because they are no more than conclusions,

> are not entitled to the assumption of truth." Id., at 1950. Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."

Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir. 2010) (quoting Iqbal, 129 S. Ct. at 1950).

In considering a motion to dismiss, the court generally relies on the pleadings, attached exhibits, and matters of public record. Sands v. McCormick, 502 F.3d 263, 268 (3d Cir. 2007). The court may also consider "undisputedly authentic document[s] that a defendant attached as an exhibit to a motion to dismiss if the plaintiff's claims are based on the [attached] documents." Pension Benefit Guar. Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir. 1993). Moreover, "documents whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered." Pryor v. Nat'l Collegiate Athletic Ass'n, 288 F.3d 548, 560 (3d Cir. 2002); see also U.S. Express Lines, Ltd. v. Higgins, 281 F.3d 382, 388 (3d Cir. 2002) (holding that "[a]lthough a district court may not consider matters extraneous to the pleadings, a document integral to or explicitly relied upon in the complaint may be considered without converting the motion to dismiss in one for summary judgment"). However, the court may not rely on other parts of the record in determining a motion to dismiss, or when determining whether a proposed amended

complaint is futile because it fails to state a claim upon which relief may be granted. Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250, 1261 (3d Cir. 1994).

Judged by these standards, we find that the cross-claim asserted by FOA, while spare, is legally sufficient in that it asserts that the failure to renew Richard's insurance policy was due to errors and omissions by Ocwen, and further contends that the agreement between the parties contractually obligated Ocwen to indemnify FOA. In our view, these well-pleaded allegations are adequate to state a cross-claim for indemnification against Ocwen at this stage where we are limited to a consideration of the pleadings themselves.

Ocwen, however, faults FOA for failing to specify the contractual provisions which give rise to this duty to indemnify and suggests that no such duty exists. This argument, however, requires us to foray beyond the pleadings themselves and to consider extraneous matters that are not before us at present. Therefore, this analysis is more appropriately conducted through a motion for summary judgment, and we will deny Ocwen's request to dismiss this cross-claim without prejudice to a renewal of this legal defense through a properly documented summary judgment motion.

We also share Ocwen's concern that the contractual duty to indemnify asserted by FOA is not stated with greater clarity, a measure which should be a simple task given the apparent existence of a contract between these parties. Therefore, we will take steps to rectify this ambiguity. Accordingly:

> [W]e find that this particular [cross-claim] aptly:
>
>> highlight[s] the particular usefulness of the Rule 12(e) motion for a more definite statement. Under Rule 12(e), [the court may order] a more definite statement "[i]f a pleading ... is so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading." Fed.R.Civ.P. 12(e) ..... When a complaint fashioned under a notice pleading standard does not disclose the facts underlying a plaintiff's claim for relief, the defendant cannot reasonably be expected to frame a proper, fact-specific ... defense..... The Rule 12(e) motion for a more definite statement is perhaps the best procedural tool available to the defendant to obtain the factual basis underlying a plaintiff's claim for relief.
>
> <u>Thomas v. Independence Tp.</u>, 463 F.3d 285, 301 (3d Cir. 2006) Given the legal and factual ambiguity of the [cross-claim], we believe that the [FOA]f should be required to provide a more definite statement of these claims before [Ocwen] and the court are tasked with assessing the legal merits of these alleged claims. Therefore, [FOA]f will be directed pursuant to Rule 12(e) to submit a more definite statement of these claims.

<u>Williams v. McCleaf</u>, No. 1:19-CV-85, 2019 WL 4034422, at *1 (M.D. Pa. Aug. 27, 2019). Specifically, within 21 days, FOA shall provide a more definite statement of its indemnification claim providing Ocwen with specific reference to the contractual basis for indemnification in this case.

An appropriate order follows.

/s/ *Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge