## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **WILSON P. RICHARD,** | : | **Civil No. 3:18-CV-559** |
| | : | |
| **Plaintiff** | : | |
| | : | |
| **v.** | : | **(Magistrate Judge Carlson)** |
| | : | |
| **FINANCE OF AMERICA** | : | |
| **MORTGAGE, LLC formerly known** | : | |
| **as GATEWAY FUNDING** | : | |
| **DIVERSIFIED MORTGAGE** | : | |
| **SERVICES, LP; OCWEN LOAN** | : | |
| **SERVICING, LLC; QBE INSURANCE** | : | |
| **CORPORATION; PROGRESSIVE** | : | |
| **SPECIALITY INSURANCE** | : | |
| **AGENCY, INC.; and GREAT** | : | |
| **AMERICAN ASSURANCE** | : | |
| **COMPANY,** | : | |
| | : | |
| **Defendants** | : | |

## MEMORANDUM OPINION

## I.      Introduction

As we have noted, this case presents a homeowner's nightmare scenario. The plaintiff, Wilson P. Richard, purchased a home in December 2014, obtaining a mortgage through Finance of America (FOA), which was formerly known as Gateway Funding. In what is a commonplace practice, the mortgage financing included escrow provisions allowing the loan servicer to retain funds to pay real

estate taxes and homeowner insurance. In what is yet another common practice in this industry, after making this mortgage loan, FOA sold the loan to another loan servicer, Ocwen, in January of 2015. Ocwen, in turn, sold the loan back to FOA in early December of 2015.

What then followed were a series of mistakes, mishaps, misadventures and miscommunications which set the stage for this lawsuit. When Ocwen transferred Richard's mortgage back to FOA in early December 2015, according to Richard and FOA it misstated the status of the escrow account. FOA, which was now responsible for servicing Richard's mortgage, then failed in mid-December 2015 to make the required insurance premium payment from the escrow account to ensure continuation of Richard's home owner policy and that policy was cancelled. Through additional mishaps and miscommunications, it is alleged that notice of this cancellation was never timely received by Richard or FOA. Instead, Richard and FOA now seem to acknowledge that the first notice they received of the cancellation of this insurance occurred in March of 2016, following an incident in which Richard's home suffered  significant water damage.

When Wilson reached out to what he believed was his homeowner insurance company to report this damage and make an insurance claim, he learned to his dismay that the policy had lapsed and that Richard could only renew the policy if he first paid for the water damage which had occurred in March of 2016 out of his own

2

resources. Richard then contacted FOA, the loan servicer, which arranged for the substitution of a lender force-placed insurance policy[1] on this property. For Richard, this force-placed insurance was an inadequate solution to the dilemma created by the cancellation of his original insurance policy. The force-placed insurance provided less coverage, and only protected the interest of the mortgagee, not Richard's equity interest in the home. Thus, it provided little comfort to Richard, the mortgagor. According to Richard, these inadequacies were further highlighted in February 2017 when he suffered a second significant, and largely uncompensated, water damage incident at his home. As a result, Richard alleges that he has suffered losses totaling $77,000.

## II.   **Statement of Facts and of the Case**

### A.   **Procedural History**

Simply put, this is a case about insurance and what kind of indemnification may be owed to the plaintiff, Wilson P. Richard, for two separate incidents of water damage that occurred at Wilson's home in Jim Thorpe, Pennsylvania in March 2016 and February 2017. Wilson's complaint, which has been amended three times, (Docs. 1, 33, 69, 93), recites that Richard was harmed by a course of conduct that

---

[1] "[T]he term 'force-placed insurance' means hazard insurance obtained by a servicer on behalf of the owner or assignee of a mortgage loan that insures the property securing such loan." 12 C.F.R. § 1024.37(a)(1).

resulted in the cancellation of his original homeowner's insurance and the substitution of a lender force-placed insurance policy in 2016, which provided him with less coverage at the time that he experienced property damage losses in 2016 and 2017. While Richard has pursued these claims in a global, comprehensive fashion, bringing this action against his mortgagee; a mortgage servicing company; two insurance companies; and an insurance agency, seeking damages he claims he is owed for water damage to his home, the critical events which form the basis for Richard's claims took place between December 2015 and March of 2016, while FOA was the loan servicer on this mortgage. Thus, our focus is upon the legal relationship between these parties at this crucial juncture.

Focusing upon the relationship between Richard and FOA, the plaintiff's third amended complaint alleges in two counts that FOA's failure to maintain hazard insurance on this property, coupled with its acquisition of deficient force-placed insurance while it was the loan servicer violated the Real Estate Settlement and Procedure Act (RESPA), 12 U.S.C. § 2601, *et seq*., and constituted a breach of contract. (Doc. 93, Counts I and II). With Richard's claims framed in this fashion, the parties have filed cross motions for summary judgment. (Docs. 124 and 130). FOA's motion for partial summary judgment seeks the entry of a judgment in the defendant's favor on Richard's statutory RESPA claim. Richard's cross motion insists that the plaintiff is entitled to a judgment in his favor as a matter of law on

both the RESPA and breach of contracts claims. These motions are fully briefed and are, therefore, ripe for resolution.

For the reasons set forth below, the motions will be denied.

**B.     Statement of Facts[2]**

There is little dispute between the parties regarding the operative facts in this case. Those facts reveal that on or about December 12, 2014, Richard purchased the house located at 12 Poplar Drive, Jim Thorpe, Pennsylvania. Richard financed the home purchase through a loan issued by Gateway Funding Diversified Mortgage Services, LP ("Gateway"), now known as Finance of America Mortgage LLC ("FOA"). As part of his loan obligations, Richard issued a mortgage to the lender, and the mortgage required that he escrow real estate taxes and property insurance premiums. It was then contemplated that the lender would use these funds to pay the tax and insurance obligations on this property.

Prior to closing on the property, Richard secured a policy of hazard insurance for the property, which had to be renewed annually and for which the policy period began December 12, 2014 and continued through December 12, 2015. At the time of the closing, Richard received an initial escrow account statement that indicated

---

[2] This statement of facts is derived from the parties' fact statements submitted in connection with the pending cross motions for summary judgment to the extent that these factual averments are supported by the evidentiary record or otherwise undisputed.

that Gateway-FOA would make a homeowner policy renewal payment in the amount of $1,288 in December of 2015.

Shortly after this real estate closing, in January of 2015 Richard received notice that Gateway-FOA had transferred loan servicing responsibilities for this loan to Ocwen Loan Servicing. It is undisputed, however, that Ocwen returned servicing rights on Richard's loan to FOA on December 2, 2015, ten days prior to the expiration of Richard's hazard insurance policy, and Richard received notice that FOA was now servicing this loan on or about December 8, 2015.

Thus, it is uncontested that by early December 2015, FOA was responsible for servicing this loan, including making escrow payments. Richard and FOA also seem to agree that when Ocwen transferred this loan back to FOA, it provided FOA with a spreadsheet which mistakenly stated that Richard had waived the escrow of his insurance premiums and real estate taxes. Ocwen also allegedly failed to change the Mortgagee or Loss Payee on the policy to FOA, thus impairing FOA's ability to receive notices from the insurance carrier.[3] At the time that FOA assumed

---

[3] We have also found that Richard failed to update his address information which he had provided to the insurance company and, as a result, did not receive timely notice of the lapse in coverage which was forwarded by the insurance company to the address previously provided by Richard. Richard v. Fin. of Am. Mortg., LLC, No. 3:18-CV-559, 2019 WL 1983824, at *1 (M.D. Pa. Jan. 7, 2019), report and recommendation adopted sub nom. Richard v. Fin. of Am. Mortgages, LLC, No. 3:18-CV-559, 2019 WL 1980693 (M.D. Pa. May 3, 2019)

responsibility for servicing this loan, there were sufficient funds held in escrow to pay the hazard insurance premium. However, those funds were never disbursed by FOA and this homeowner hazard insurance policy lapsed.

It appears that neither Richard nor FOA were aware of this fact for several months. On March 15, 2016, Richard sustained damage to his home when water pipes ruptured. Richard contacted what he believed to be his hazard insurance company, only to learn that his insurance policy had been cancelled due to nonpayment. Richard was also informed that his insurer refused to reinstate the policy until after the damage he had suffered in March 2016 was repaired. Dismayed, Richard contacted FOA, which confirmed the nonpayment of this insurance premium while it held these loan servicing responsibilities. FOA then notified Richard on three occasions in March and April of 2016 that it was obtaining force-placed insurance for the property to replace the full hazard insurance policy that had lapsed while it was servicing this loan.

FOA secured this force-placed insurance by May 2016 for a one-year term from May 5, 2016 through May 5, 2017. While Richard received some partial payments from FOA and Ocwen, it is alleged that the force-placed insurance did not fully cover his March 2016 losses. In February of 2017, Richard suffered a second loss to his property due to further water damage.  Once again, while Richard received

some partial payments from FOA and Ocwen, it is alleged that the force-placed

insurance did not fully cover his February 2017 losses.

It is against this factual backdrop that we evaluate these cross-motions for

summary judgment.

## III.   Discussion

### A.   Cross Motions for Summary Judgment – Standard of Review

The parties have filed cross motions for summary judgment pursuant to Rule

56 of the Federal Rules of Civil Procedure, which provides that the court shall grant

summary judgment if the movant shows that there is no genuine dispute as to any

material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ.

P. 56(a). Through summary adjudication, a court is empowered to dispose of those

claims that do not present a "genuine dispute as to any material fact," Fed. R. Civ.

P. 56(a), and for which a trial would be "an empty and unnecessary formality."

Univac Dental Co. v. Dentsply Int'l, Inc., No. 07-0493, 2010 U.S. Dist. LEXIS

31615, at *4 (M.D. Pa. Mar. 31, 2010). The substantive law identifies which facts

are material, and "[o]nly disputes over facts that might affect the outcome of the suit

under the governing law will properly preclude the entry of summary judgment."

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute about a

material fact is genuine only if there is a sufficient evidentiary basis that would allow a reasonable fact finder to return a verdict for the non-moving party. Id., at 248-49.

The moving party has the initial burden of identifying evidence that it believes shows an absence of a genuine issue of material fact. Conoshenti v. Pub. Serv. Elec. & Gas Co., 364 F.3d 135, 145-46 (3d Cir. 2004). Once the moving party has shown that there is an absence of evidence to support the non-moving party's claims, "the non-moving party must rebut the motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument." Berckeley Inv. Group. Ltd. v. Colkitt, 455 F.3d 195, 201 (3d Cir. 2006), accord Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). If the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial," summary judgment is appropriate. Celotex, 477 U.S. at 322. Summary judgment is also appropriate if the non-moving party provides merely colorable, conclusory, or speculative evidence. Anderson, 477 U.S. at 249. There must be more than a scintilla of evidence supporting the non-moving party and more than some metaphysical doubt as to the material facts. Id., at 252; see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In making this determination, the Court must "consider all evidence in the light most favorable to the party opposing the motion." A.W. v. Jersey City Pub. Schs., 486 F.3d 791, 794 (3d Cir. 2007).

Moreover, a party who seeks to resist a summary judgment motion by citing to disputed material issues of fact must show by competent evidence that such factual disputes exist. Further, "only evidence which is admissible at trial may be considered in ruling on a motion for summary judgment." Countryside Oil Co., Inc. v. Travelers Ins. Co., 928 F. Supp. 474, 482 (D.N.J. 1995). Similarly, it is well-settled that: "[o]ne cannot create an issue of fact merely by . . . denying averments . . . without producing any supporting evidence of the denials." Thimons v. PNC Bank, NA, 254 F. App'x 896, 899 (3d Cir. 2007) (citation omitted). Thus, "[w]hen a motion for summary judgment is made and supported . . ., an adverse party may not rest upon mere allegations or denial." Fireman's Ins. Co. of Newark New Jersey v. DuFresne, 676 F.2d 965, 968 (3d Cir. 1982); see Sunshine Books, Ltd. v. Temple University, 697 F.2d 90, 96 (3d Cir. 1982). "[A] mere denial is insufficient to raise a disputed issue of fact, and an unsubstantiated doubt as to the veracity of the opposing affidavit is also not sufficient." Lockhart v. Hoenstine, 411 F.2d 455, 458 (3d Cir. 1969). Furthermore, "a party resisting a [Rule 56] motion cannot expect to rely merely upon bare assertions, conclusory allegations or suspicions." Gans v. Mundy, 762 F.2d 338, 341 (3d Cir. 1985) (citing Ness v. Marshall, 660 F.2d 517, 519 (3d Cir. 1981)).

Finally, it is emphatically not the province of the court to weigh evidence or assess credibility when passing upon a motion for summary judgment. Rather, in adjudicating the motion, the court must view the evidence presented in the light most

favorable to the opposing party, <u>Anderson</u>, 477 U.S. at 255, and draw all reasonable inferences in the light most favorable to the non-moving party. <u>Big Apple BMW, Inc. v. BMW of North America, Inc.</u>, 974 F.2d 1358, 1363 (3d Cir. 1992). Where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true. <u>Id.</u> Additionally, the court is not to decide whether the evidence unquestionably favors one side or the other, or to make credibility determinations, but instead must decide whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented. <u>Anderson</u>, 477 U.S. at 252; <u>see also</u> <u>Big Apple BMW</u>, 974 F.2d at 1363. In reaching this determination, the Third Circuit has instructed that:

> To raise a genuine issue of material fact . . . the opponent need not match, item for item, each piece of evidence proffered by the movant. In practical terms, if the opponent has exceeded the "mere scintilla" threshold and has offered a genuine issue of material fact, then the court cannot credit the movant's version of events against the opponent, even if the quantity of the movant's evidence far outweighs that of its opponent. It thus remains the province of the fact finder to ascertain the believability and weight of the evidence.

<u>Id.</u> In contrast, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." <u>Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986) (internal quotation marks omitted); <u>NAACP v. North Hudson Reg'l Fire & Rescue</u>, 665 F.3d 464, 476 (3d Cir. 2011).

In this case, we are presented with cross motions for summary judgment. In this setting:

> "When confronted with cross-motions for summary judgment ... 'the court must rule on each party's motion on an individual and separate basis, determining, for each side, whether a judgment may be entered in accordance with the summary judgment standard.' " <u>Transguard Ins. Co. of Am., Inc. v. Hinchey</u>, 464 F.Supp.2d 425, 430 (M.D.Pa.2006) (quoting <u>Marciniak v. Prudential Fin. Ins. Co. of Am.</u>, 184 Fed.Appx. 266, 270 (3d Cir.2006)). "If review of [the] cross-motions reveals no genuine issue of material fact, then judgment may be entered in favor of the party deserving of judgment in light of the law and undisputed facts." <u>Id</u>. (citing <u>Iberia Foods Corp. v. Romeo</u>, 150 F.3d 298, 302 (3d Cir.1998)).

<u>Pellicano v. Office of Pers. Mgmt., Ins. Operations</u>, 8 F. Supp. 3d 618, 625–26 (M.D. Pa. 2014), <u>aff'd sub nom. Pellicano v. Office of Pers. Mgmt.</u>, 714 F. App'x 162 (3d Cir. 2017). This is the analytical lens we will apply when considering these cross-motions for summary judgment.

## B.   <u>Legal Standards Governing RESPA and Breach of Contract Claims</u>

Richard brings two claims against FOA in this amended complaint: first, an allegation that FOA violated the Real Estate Settlement and Procedure Act (RESPA), 12 U.S.C. § 2601, *et seq*., and second, a claim for breach of contract. Turning first to Richard's RESPA claims,  "RESPA is a federal consumer protection statute applicable to mortgage lending." <u>Hawk v. Carrington Mortg. Servs., LLC.</u>, No. 3:14-1044, 2016 WL 4414847, at *3 (M.D. Pa. June 29, 2016), <u>report and recommendation adopted as modified sub nom. Hawk v. Carrington Mortg. Servs.</u>,

LLC, No. 3:14-CV-1044, 2016 WL 4433665 (M.D. Pa. Aug. 17, 2016). "Statutes like RESPA are enacted to protect consumers from unfair business practices by giving consumers a private right of action against service providers." Alston v. Countrywide Fin. Corp., 585 F.3d 753, 764 (3d Cir. 2009). Consistent with its broad remedial purpose, the majority view is that RESPA provides a private right of action for persons injured both by violations of the statute and its implementing regulations.[4]

As a creature of statute, Richard's RESPA claim must be derived from the statute itself and its implementing regulations. Therefore, the gist of any RESPA claim must be a loan servicer violation of some legal duty created by the Act and its accompanying regulations. In the instant case, Richard's RESPA claims all relate to losses that he alleges flowed from the failure to maintain the original, advantageous homeowner insurance policy on his property and the decision to substitute what

---

[4] In re Coppola, 596 B.R. 140, 153 n. 49 (Bankr. D.N.J. 2018) citing Lage v. Ocwen Loan Servicing, LLC, 839 F.3d at 1007 (as to 12 C.F.R. §§ 1024.35 and 1024.41; Sutton v. CitiMortgage, Inc., 228 F.Supp.3d 254, 270-71 (S.D.N.Y. 2017); Ford v. Nationstar Mortgage, LLC, 2018 WL 2418541, at *3 (D. Nev. May 28, 2018); Weber v. Seterus, Inc., 2018 WL 1519163, at *7 (N.D. Ill. Mar. 28, 2018); Starke v. Select Portfolio Servicing, Inc., 2017 WL 6988657, at *5 (N.D. Ill. Dec. 18, 2017) (all as to 12 C.F.R. § 1024.35); Anderson v. Wells Fargo Home Mortgage, 2017 WL 4181114, *5 (E.D. Calif. Sept. 21, 2017); and Brewer v. Wells Fargo Bank, N.A., 2017 WL 1315579, at *5 (N.D. Calif. Apr. 6, 2017) (both as to 12 C.F.R. § 1024.36).

Richard contends was inadequate force-placed insurance for the lapsed policy that initially existed on this property. Thus, the gravamen of any RESPA violation in this setting is a failure to comply with the statute's provisions relating to retaining hazard insurance and securing force-placed insurance. On this score, RESPA appears to impose a series of statutory and regulatory responsibilities upon loan servicers.

First, by statute "[a] servicer of a federally related mortgage shall not--**(A)** obtain force-placed hazard insurance unless there is a reasonable basis to believe the borrower has failed to comply with the loan contract's requirements to maintain property insurance." 12 U.S.C. § 2605(k)(1)(A). Thus, a servicer's decision to acquire force-placed insurance must be grounded on a reasonable belief that the borrower has failed to comply with the requirement to maintain property insurance.

Second, in determining whether the servicer had a reasonable basis for obtaining force-placed insurance, RESPA imposes specific requirements on loan servicers, and states that:

> **(l) Requirements for force-placed insurance**
> A servicer of a federally related mortgage shall not be construed as having a reasonable basis for obtaining force-placed insurance unless the requirements of this subsection have been met.
>
> **(1) Written notices to borrower**
> A servicer may not impose any charge on any borrower for force-placed insurance with respect to any property securing a federally related mortgage unless--
> **(A)** the servicer has sent, by first-class mail, a written notice to the borrower containing--

**(i)** a reminder of the borrower's obligation to maintain hazard insurance on the property securing the federally related mortgage;

**(ii)** a statement that the servicer does not have evidence of insurance coverage of such property;

**(iii)** a clear and conspicuous statement of the procedures by which the borrower may demonstrate that the borrower already has insurance coverage; and

**(iv)** a statement that the servicer may obtain such coverage at the borrower's expense if the borrower does not provide such demonstration of the borrower's existing coverage in a timely manner;

**(B)** the servicer has sent, by first-class mail, a second written notice, at least 30 days after the mailing of the notice under subparagraph (A) that contains all the information described in each clause of such subparagraph; and

**(C)** the servicer has not received from the borrower any demonstration of hazard insurance coverage for the property securing the mortgage by the end of the 15-day period beginning on the date the notice under subparagraph (B) was sent by the servicer.

**(2) Sufficiency of demonstration**

A servicer of a federally related mortgage shall accept any reasonable form of written confirmation from a borrower of existing insurance coverage, which shall include the existing insurance policy number along with the identity of, and contact information for, the insurance company or agent, or as otherwise required by the Bureau of Consumer Financial Protection.

12 U.S.C. § 2605(l). Thus, RESPA imposes certain prior notice requirements on a servicer as a pre-condition to the imposition of force-placed insurance and prescribes for loan servicers what constitutes adequate proof of insurance by a borrower who contests the need for acquisition force-placed insurance. Additionally, RESPA establishes some basic substantive limitations on force-placed insurance charges that may be passed on to borrowers, stating that: "All charges, apart from charges subject

to State regulation as the business of insurance, related to force-placed insurance imposed on the borrower by or through the servicer shall be bona fide and reasonable." 12 U.S.C. § 2605(m).

Further, beyond these statutory duties, the implementing regulations enacted pursuant to RESPA place additional responsibilities upon loan servicers. Thus, in examining Richard's RESPA claims we must also:

> [C]onsider the obligations imposed on loan servicers under [the regulations] with respect to managing escrow accounts and the timely payment of hazard insurance. [These regulations] require[] the loan servicer to pay disbursements before the deadline to avoid a penalty and to advance funds to make distributions in a timely manner, as long as the borrowers are not more than 30 days behind on their payments. 12 C.F.R. §§ 1024.17(k)(1)-(2), 1324.34. Moreover, "[a] servicer is considered unable to disburse funds from a borrower's escrow account to ensure that the borrower's hazard insurance premiums are paid in a timely manner **only** if the servicer has a reasonable basis to believe either that the borrower's hazard insurance has been canceled (or was not renewed) for reasons other than nonpayment of premium charges or that the borrower's property is vacant." 12 C.F.R. § 1024.17(k)(5)(ii)(A) (emphasis added).

Matlock v. RoundPoint Mortg. Servicing Corp., No. 3:18-CV-00047, 2020 WL 1452060, at *6 (M.D. Tenn. Mar. 25, 2020). Indeed, with respect to the payment of hazard insurance, these regulations impose a sweeping obligation upon loan servicers to ensure that this insurance remains in place for mortgagors, stating as follows:

> Timely payments.

(1) If the terms of any federally related mortgage loan require the borrower to make payments to an escrow account, the servicer must pay the disbursements in a timely manner, that is, on or before the deadline to avoid a penalty, as long as the borrower's payment is not more than 30 days overdue.

(2) The servicer must advance funds to make disbursements in a timely manner as long as the borrower's payment is not more than 30 days overdue. Upon advancing funds to pay a disbursement, the servicer may seek repayment from the borrower for the deficiency pursuant to paragraph (f) of this section.

12 C.F.R. § 1024.17(k)(1)-(2). This loan servicer timely payment obligation specifically extends to hazard insurance payments out of escrow funds, where the regulations provide that:

(5) Timely payment of hazard insurance—

(i) In general. Except as provided in paragraph (k)(5)(iii) of this section, with respect to a borrower whose mortgage payment is more than 30 days overdue, but who has established an escrow account for the payment for hazard insurance, as defined in § 1024.31, a servicer may not purchase force-placed insurance, as that term is defined in § 1024.37(a), unless a servicer is unable to disburse funds from the borrower's escrow account to ensure that the borrower's hazard insurance premium charges are paid in a timely manner.

(ii) Inability to disburse funds—

(A) When inability exists. A servicer is considered unable to disburse funds from a borrower's escrow account to ensure that the borrower's hazard insurance premiums are paid in a timely manner only if the servicer has a reasonable basis to believe either that the borrower's hazard insurance has been canceled (or was not renewed) for reasons other than nonpayment of premium charges or that the borrower's property is vacant.

17

Case 3:18-cv-00559-MCC   Document 138   Filed 10/26/20   Page 18 of 23

(B) When inability does not exist. A servicer shall not be considered unable to disburse funds from the borrower's escrow account because the escrow account contains insufficient funds for paying hazard insurance premium charges.

(C) Recoupment of advances. If a servicer advances funds to an escrow account to ensure that the borrower's hazard insurance premium charges are paid in a timely manner, a servicer may seek repayment from the borrower for the funds the servicer advanced, unless otherwise prohibited by applicable law.

12 C.F.R. § 1024.17(k)(5).

Taken together, these provisions of RESPA provide an important measure of protection for mortgage borrowers against both lapses in hazard insurance coverage and the expenses associated with the undisclosed, unilateral acquisition of force-placed insurance on properties they own by loan servicers.

As for Richard's state law breach of contract claim to state a claim for breach of contract under Pennsylvania law, a plaintiff "must plead: (1) the existence of a contract, including its essential terms; (2) a breach of a duty imposed by the contract; and (3) resultant damage." Papurello v. State Farm Fire & Cas. Co., 144 F. Supp. 3d 746, 762 (E.D. Pa. 2015) (quoting Kane v. State Farm Fire & Cas. Co., 841 A.2d 1038, 1042 (Pa. Super. Ct. 2003).

## C. **The Cross Motions for Summary Judgment Will Be Denied**.

Judged against these legal guideposts, we conclude that the parties' competing cross motions for summary judgment should be denied at this time.

Turning first to FOA's motion for partial summary judgment on Richard's RESPA claim, the gist of this defense summary judgment motion is FOA's insistence that it provided proper notice to Richard in March and April of 2016 before it obtained this force-placed insurance. According to FOA, this proper notice insulates it from any liability under RESPA.

In our view, this motion for partial summary judgment fails because it relies upon too narrow and crabbed a notion of the scope of RESPA and ignores material facts that preceded FOA securing this force-placed insurance in the spring of 2016. Under RESPA, we do not deem the duty of a loan servicer to entail simply providing notice to a borrower prior obtaining force-placed insurance. The statute and its implementing regulations impose a far more fundamental duty on loan servicers like FOA— a duty to timely pay hazard insurance premiums in order to avoid a lapse in coverage and the necessity of securing inferior force-placed insurance.

It is this fundamental duty that FOA is alleged to have violated, and it is this alleged failure to protect Richard's interests by timely paying the hazard insurance premium out of the existing escrow account balance, that forms the gravamen of Richard's RESPA claim. Viewed in this light, FOA cannot avoid liability for this greater failure on its part to make timely hazard insurance payments by simply pointing to the fact that, after it is alleged to have harmed Richard when its inaction led to the loss of hazard insurance on this property, it subsequently complied with

RESPA's force-placed insurance notice requirements. Because FOA's claimed defense does not relate to, or excuse, its prior alleged RESPA violations, FOA's motion for partial summary judgment fails and will be denied.

As for Richard's summary judgment motion, which seeks judgment in the plaintiff's favor on both the RESPA and breach of contract claims, this motion presents a far closer question since it is undisputed that FOA failed to make required hazard insurance payments out of the escrow account in December of 2015 when it had a contractual and statutory duty to do so. These immutable facts may well establish FOA's liability, but FOA points to evidence that at the time this loan was returned to it, Ocwen misstated the status of Richard's escrow account, asserting that he had waived the escrow of his insurance premiums and real estate taxes. FOA suggests that this misstatement by Ocwen at a minimum raises factual questions concerning the reasonableness of FOA's conduct which preclude summary judgment.

FOA presents this contention in a footnote at the close of its reply brief. (Doc. 135 at 3 n. 4). Richard has not responded to the specific argument, and acting out of an abundance of caution, we will deny summary judgment in this case, since the parties have not fully addressed the legal and factual significance of Ocwen's alleged error to Richard's claims against FOA. Thus, while we deny Richard's summary judgment motion, we do so without prejudice to further briefing and submissions on

this issue, a question which may be closely related to FOA's cross-claim for indemnification from Ocwen.

Finally, we note that this case, which involves a series of mutual mistakes, mishaps, misadventures and miscommunications, has been pending for some two years. With the entry of this order denying summary judgment to either party, and our prior ruling that FOA may maintain a potential cross-claim against Ocwen, the time seems ripe for all parties to consider mediation of this dispute. Accordingly, we will direct the parties to consult, confer, and notify us on or before **November 16, 2020** if they wish to pursue court-ordered settlement or mediation discussions.

An appropriate order follows.

/s/ *Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **WILSON P. RICHARD,** | : | **Civil No. 3:18-CV-559** |
| | : | |
| **Plaintiff** | : | |
| | : | |
| **v.** | : | **(Magistrate Judge Carlson)** |
| | : | |
| **FINANCE OF AMERICA** | : | |
| **MORTGAGE, LLC formerly known** | : | |
| **as GATEWAY FUNDING** | : | |
| **DIVERSIFIED MORTGAGE** | : | |
| **SERVICES, LP; OCWEN LOAN** | : | |
| **SERVICING, LLC; QBE INSURANCE** | : | |
| **CORPORATION; PROGRESSIVE** | : | |
| **SPECIALITY INSURANCE** | : | |
| **AGENCY, INC.; and GREAT** | : | |
| **AMERICAN ASSURANCE** | : | |
| **COMPANY,** | : | |
| | : | |
| **Defendants** | : | |

## **ORDER**

AND NOW this 26th day of October 2020, in accordance with the accompanying Memorandum Opinion, IT IS ORDERED that the parties' cross-motions for summary judgment, (Docs. 124 and 130) are DENIED. IT IS FURTHER ORDERED that parties shall consult, confer, and notify us on or before **November 16, 2020** if they wish to pursue court-ordered settlement or mediation discussions.

/s/  *Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge